594 P.2d 1093

In the Matter of the Representation of the State of Idaho in STATE of Idaho ex rel. Gary M. HAMAN, Prosecuting Attorney for Kootenai County, Plaintiff-Appellant,

v.

E. R. W. FOX and Eileen Fox, husband and wife, Burgess K. McDonald, duly appointed representative of Carmelita K. McDonald, Deceased, and the unknown heirs and devisees of each and every one of them, and the unknown owners of or claimants to any interest in that certain parcel of land situated in Kootenai County, Idaho, particularly described as follows, to wit: Beginning at the Southwest corner of Lot 8, Block 29, Lakeshore Addition to Coeur d'Alene, Idaho, said point being a concrete monument; thence South 83°42'00" East along the South Boundary of said Block 29 a distance of 352.03 feet to the Southeast corner of Lot 14, said Block 29, thence South 19°38'39" East, 85.70 feet to the Northwesternmost end of a concrete retaining wall, said point being the True Point of Beginning for this description, thence South 3°25'01" West, 23.32 feet to the Southwesternmost corner of said wall, thence South 83°51'05" East, 249.94 feet to the Southeasternmost corner of said wall, thence North 4°33'35" East, 24.53 feet to the Northeasternmost end of said wall, thence North 84°07'53" West, 250.37 feet to the Northwesternmost end of said wall and the True Point of Beginning for this description, Defendants-Respondents.

No. 12430.

Supreme Court of Idaho.

May 21, 1979.

Scott W. Reed, Special Deputy Pros. Atty., Robert Thompson, Deputy Pros. Atty., Coeur d'Alene, for plaintiff-appellant.

E. L. Miller, of Miller, Knudson & Eismann, Coeur d'Alene, for defendants-respondents.

McFADDEN, Justice.

This is an action brought by the Prosecuting Attorney of Kootenai County on behalf of the people of the state of Idaho to establish public rights in and to privately owned water front property on Lake Coeur d'Alene. The district court determined that the public had no right or interest in the property and gave judgment to the property owners. We affirm.

## THE FACTS

Defendants-respondents C. R. W. Fox and Eileen Fox, husband and wife, and Burgess K. McDonald, personal representative of the estate of Carmelita K. McDonald, deceased, own adjoining residential properties in the City of Coeur d'Alene. The properties consist of two residential lots in the Lake Shore Addition Plat together with two water front parcels abutting the waters of Lake Coeur d'Alene. The water front property is separated from the platted lots by Lake Shore Drive, a dedicated public street. Respondents' homes and yards are in the platted lots to the north of Lake Shore Drive. The water front lots to the south of Lake Shore Drive are for the most part sandy beach. The beach lots are adjoined on both sides by other privately owned lots, which together comprise what is commonly known as Sander's Beach. The beach has no public access other than from the lake itself. But the public does have access to the lake via a deeded right-of-way to the west of respondents' property and via a ten-foot wide pathway to the east of respondents' property.

Respondents' beach property extends south from Lake Shore Drive to the ordinary mean high water mark of Lake Coeur d'Alene. Their adjoining lots have a combined lake frontage of 250 feet and a depth of from 60 to 75 feet. The property is subject to the seasonal fluctuations of high water in the spring and low water in the late summer and fall. The property is also subject to the washings and erosive forces of the lake.

For many years, at least since the 1920's, respondents and their predecessors have maintained seawalls to protect a portion of their property immediately south of Lake Shore Drive from the erosive forces of the lake. In 1971 respondents obtained the necessary building permits from the City of Coeur d'Alene and constructed a new concrete seawall. The new wall is a three-sided structure extending approximately 20 feet closer to the lake than the earlier walls and running the entire 250 feet across respondents' property. The wall does not interfere with swimming or boating on the lake, nor does it extend to the ordinary high water mark of the lake. The wall has, however, eliminated the public use of the enclosed area for sunbathing, picnicking and other related activities. It is this 20 feet by 250 feet enclosed area which is in dispute here.

This action was brought to force respondents to remove the seawall and to permanently enjoin them from further interfering with the alleged right of the public to use the enclosed areas. The complaint alleged that for over thirty years the general public had enjoyed complete freedom to use the beach for recreational purposes. It was alleged that by virtue of such public use respondents had impliedly dedicated the property to the general public or in the alternative that the public had acquired an easement thereon by prescription or by custom. It was also alleged that the wall interfered with the public trust in which the waters of the lake are held. After a trial to the court sitting without a jury, the people of the state of Idaho were adjudged to have no right or interest whatever to the property. The requested injunctive relief was denied, and judgment was entered in favor of respondents. This appeal followed.

## STANDING

No governmental agency is in any way affiliated with this litigation and no rights of the State in its capacity as sovereign are concerned here. Nor does the City of Coeur d'Alene or Kootenai County claim any interest to this property. The action is brought by the Prosecuting Attorney for Kootenai County, but is brought solely on behalf of the people at large, i. e., the general public of the state.

A previous action relating to this property has been brought by the State of Idaho through the State Land Board and the Attorney General's office. The State there alleged that the seawall constituted a trespass upon the bed of the lake, but this claim was dismissed upon the stipulation that the wall in fact was situated entirely upon respondents' private property. The State also

alleged the existence of public rights in and to the property by an implied dedication and/or an easement by prescription. But these claims were also dismissed upon the district court's determination that the attorney general was not the proper party plaintiff to assert such public rights. No appeal was taken by the State of Idaho from the dismissal of that action. In the present case, respondents likewise challenge the standing of the prosecuting attorney to bring the action on behalf of the people of the State of Idaho.

I.C. § 31–2604(1) provides that it is the duty of the prosecuting attorney:

To prosecute or defend all actions, applications or motions, civil or criminal, in the district court of his county in which the people, or the state, or the county, are interested, or are a party; and when the place of trial is changed in any such action or proceeding to another county, he must prosecute or defend the same in such other county.

In contrast, I.C. § 67–1401(1) provides that it is the duty of the attorney general

To attend the courts of the state of Idaho and prosecute or defend all causes to which the state or any elective officer thereof, or a judge or magistrate, in his official capacity, is a party and all causes to which any county may be a party, unless the interest of the county is adverse to the state or some officer thereof acting in his official capacity, and except as otherwise provided by law.

The difference between these two statutes insofar as this case is concerned centers around the attorney general's duty to represent the state in its sovereign capacity, while the prosecuting attorney has the additional duty to represent "the people" separately from the political entity of the state or the county. This difference is not a mere accident. The first statute enumerating the duties of the attorney general included prosecution of "all actions to which the people of the Territory of Idaho are a party." 1885, Thirteenth Session, Idaho Territory, p. 31. However, in 1887 this statute was amended to eliminate represen-

tation of the people of the state separately from the state in its sovereign status. The statute has remained unchanged in this regard to this day.

■ We are of the opinion that the legislative grant of authority to the prosecuting attorney to prosecute actions in which "the people are interested" amounts to a statutory grant of standing in the instant case. The statute empowers the prosecuting attorney to call upon the courts of this state for vindication of public rights which for all practical purposes would otherwise go unprotected. The rights contended for here are of this nature. This court therefore holds that this action is properly brought under I.C. § 31–2604(1) by the prosecuting attorney.

## THE MERITS

### A. Easement by Prescription.

■ Appellant claims a right on behalf of the general public of this state to use private property for recreational purposes. In order to establish such a right by prescription, a party must submit "reasonably clear and convincing proof of open, notorious, continuous, uninterrupted use, under a claim of right, with the knowledge of the owner of the servient tenement, for the prescriptive period." *West v. Smith,* 95 Idaho 550, 557, 511 P.2d 1326, 1333 (1973) (footnotes omitted). The prescriptive right cannot arise, however, if the use of the land is with the permission of the owner. *West v. Smith, supra; Trunnell v. Ward,* 86 Idaho 555, 389 P.2d 221 (1964); *Cox v. Cox,* 84 Idaho 513, 373 P.2d 929 (1962); *Sinnett v. Werelus,* 83 Idaho 514, 365 P.2d 952 (1961).

After hearing the testimony of some seventeen witnesses on the use of respondents' property, the trial court found "that the use herein by the public was open, notorious, continuous, and uninterrupted and with the knowledge of the defendants [respondents] for more than the prescriptive period." The court further found, however, that the public use was in fact "a permissive use" and that "the evidence herein does not establish an adverse or hostile use by the plaintiff [appellant] against the interest of

the defendants [respondents] nor any act on the part of any member of the public that would give notice to the defendants [respondents] that the public was claiming an interest adverse to them." The court therefore concluded that no public rights had been established by prescription.

■ These findings, if supported by substantial and competent evidence in the record, will not be disturbed on appeal. I.R.C.P. 52(a); *Skelton v. Spencer,* 98 Idaho 417, 565 P.2d 1374 (1977); *Idaho Water Resource Board v. Kramer,* 97 Idaho 535, 548 P.2d 35 (1976). We have carefully reviewed the record and conclude that there is substantial and competent evidence to support these findings.[1] Even so, the court's finding that the use was by permis-

1. Fourteen witnesses testified on behalf of appellant regarding individual and public use of the property. On the elements of adverse or hostile use, the following testimony was given:

Witness Young: "I have just thought of it as the public property";

Witness Manley: "I would say it would be public land and the state is the logical entity to exercise control . . .";

Witness Bowen: Q. "Did he [respondent Fox] ever charge you for that use? A. "No." Q. "you understand and respected his [respondent Fox] property rights, I assume?" A. "I sure did."

Witness Antonson: Q. "Now, over what period of time did your use continue, sir?" A. "Well, from 1919 to 1929." Q. ". . . did you ever ask permission from anyone to use the beach?" A. "I didn't need to ask them in them days"

Witness Horning: Q. ". . . you considered that all of this property to be public beach, is that correct?" A. "that's correct." ". . ." · A. "I always supposed the city owned it."

Witness Hjort: Q. ". . . you would go through Dr. Fox's gate and across his lawn to get down to the beach, is that correct?" A. "That's correct." Q. "Did you have conversations with him?" A. "I would speak to him, yes." Q. "you don't claim any personal interest in Dr. Fox's property, do you?" A. "No."

Witness Standahl: Q. "Now, when you used the east end [of respondent's beach], how did you get there?" A. "Well, we drove down mostly in front of Dr. Fox's place and parked and there was two openings, one at the far end and one at Dr. Fox's, and he had a gate, and he let us use it, but he said please close the gate, and most of the time we would go through there."

Witness Kane: ". . . I had no other reason but to believe it was public [property]."

Witness Rheams: ". . . It was always my impression that it was owned by the State . . .."

Witness Don Johnson: Q. "In your use of this beach, did you ever at any time ask permission from any one to use the beach?" A. "No, Dr. Fox was very gracious in allowing people to go through."

Witness Boughton: Q. "Which end of the beach did you use?" A. ". . . Dr. Fox's property with his permission." ". . . ."

A. "We had asked permission and we assumed that it was good as long as we were respectful of the area . . .."

Witness Ed Johnson: Q. ". . . your use was a convenience to you and your family, is that right?" A. "Yes."

Witness Walker: Q. "And you just considered it to be public beach?" A. "That's right." Q. "You assumed the City of Coeur d'Alene had some authority over the beach?" A. "Yes Sir."

Witness Halpern: Q. "And with reference to the property in front of the Fox and McDonald homes, did you make any use of that property of the Sanders Beach?" A. "Yes, I think that I probably did most of my swimming or recreational activities in front of Dr. Fox's house. Ted was a gracious gentleman and he always had his gate open most of the time and maintained his beach in the best condition of probably anybody else along Sander's Beach. Therefore, I think that myself along with many others migrated to his spot most frequently." . . . Q. "And I assume that you didn't profess or claim to acquire any right to his property in doing so, did you?" A. "No, I always enjoyed stopping and talking with Ted when he was there." Q. "And as far as you were concerned, it was permissive?" A. "Yes."

The property owners themselves testified as to the nature and extent of other individual's use of their property. Mrs. McDonald testified in part:

Q. ". . . there has been testimony here and I am sure you have heard it by many people who have said in fact they used the Sanders Beach area?: A. "Yes." Q. "What has been your intent as a property owner as to their use of the property . . .?" A. "Well, I enjoyed them using it as long as they conducted themselves properly. At times I have had to go down and speak to them or call the police." Q. "Have you told people to leave?" A. "Yes." Q. "Do you intend to give up any of your ownership?" A. "No, I do not . . .. I intend to continue to own the property and enjoy living there and as long as people behave themselves they may have the pleasure of using the beach."

Respondent Fox testified in part: Q. "There has been testimony here that through the

sion of respondents can only be sustained from that point in time in which respondents held title to the property. Respondents Fox acquired their property in 1948. Carmelita McDonald, now deceased, acquired hers in 1924. Appellant contends that the prescriptive rights to use the beach were acquired prior to 1948 and 1924, and that respondents took their fee interests subject to the already established public rights. We find it unnecessary to answer this contention. For the reasons stated below, this court is of the opinion that the "general public" or "the people of the state of Idaho" as distinguished from specific individuals cannot, absent specific statutory authorization, acquire prescriptive rights to private property.

As a starting point, it is important that the underlying legal rationale of a prescriptive right be discussed. Many courts have relied upon the fiction of the "lost-grant," i. e. it was presumed, from long possession under claim of right and with acquiescence of the owner, that there must have originally been a grant, from the owner to the claimant, which had become lost during the course of time. 2 G. Thompson, Thompson on Real Property, § 337, 171–80 (1961); 3 R. Powell, The Law of Real Property, § 413 (1977); 25 Am.Jur.2d, Easements, § 39, 452–53. Under the lost grant rationale, courts have held that the general public, considered apart from legally organized or political entities, could not acquire prescriptive rights because they could not receive a grant. *Rosemann v. Adams,* 398 S.W.2d 855 (Mo.1966); *Morgan v. McLoughlin,* 5 N.Y.2d 1041, 185 N.Y.S.2d 801, 158 N.E.2d 498 (1959); *Ivons-Nispel, Inc. v. Lowe,* 347 Mass. 760, 200 N.E.2d 282 (1964); *Bioletti v. Sindoni,* 135 N.J.Eq. 609, 39 A.2d 634 (1944). In *Ivons-Nispel, Inc. v. Lowe, supra,* in a case almost identical to the case at bar, the Supreme Judicial Court of Massachusetts stated that "We are of opinion that 'persons of the local community' and the 'general public' are too broad a group to acquire by prescription an easement to use private beaches for bathing and for recreational purposes. (citations omitted.)" 200 N.E.2d at 283.

Although Idaho long ago abandoned the fiction of the lost grant, we reach the same result as the Massachusetts court in holding that the general public cannot acquire prescriptive rights in private property. In *Last Chance Ditch Co. v. Sawyer,* an action brought by the property owner to enjoin 89 persons from permitting waste water to flow into the canal, 35 Idaho 61, 66–67, 204 P. 654, 655 (1922), the court stated

We are of the opinion, however, that the recognized fiction of a lost grant should not be given such controlling efficacy. While it is true that the statute of limitations does not in terms apply to the acquisition of title to an easement by prescription, it is generally held that by analogy such statutes are applicable. The use of an easement constitutes a direct invasion of the dominion of the proprietor of the land, and the statute forbids maintenance of an action to prevent such use as has been enjoyed openly, continuously, adversely, and with the acquiescence of the owner for a period of five years or more. The statute announces the policy of the law. It does not appear to be founded upon the fiction of a lost grant, but upon the proposition that it is the policy of the state to discourage litigation of matters which, through the lapse of time, should be considered as settled. We think the acquiescence of the owner of land in case of

years some people would use the property you owned and your gate to get to the beach . . ." A. "Yes." Q. "What was your practice in that regard . . .?" A. "Well, we were glad to have our friends and their families and children in the area use the beach." Q. "And this was with your knowledge?" A. "Certainly." Q. ". . . what was the permission factor." A. "Well, people would ask if they could come through and I would say be my guest, and then, I presume, as has been testified, people would just assume they could use the area . . .." Q. "And what was your one request when they did use it?" A. "To be ladies and gentlemen and conduct themselves as we would want them to." . . .. A. "They are certainly welcome to use the beach area if they conduct themselves properly."

continuous and adverse user of an easement is presumed, and can be disproved only by showing acts upon his part which interrupt the continuity of the use, or by appropriate action in court to prevent its continuance. (See *Lehigh Valley R. Co. v. McFarlan,* 43 N.J.L. 605.)

The statute of limitations discussed in *Last Chance Ditch Co., supra,* upon which prescriptive rights in Idaho are based, is I.C. § 5–203. This statute in effect gives an owner five years to take the necessary and appropriate legal action to have an unauthorized use of his property stopped. If the owner of the property fails to eject the trespasser or enjoin the unauthorized use, after five years his right to do so will be barred. But as against whom would the owner be barred? Only those who had actually made open, notorious, continuous, uninterrupted use, under a claim of right, with the knowledge of the owner, for the five year period. Those persons who had not made such use could be enjoined from further interfering with the owner's superior rights.

In *West v. Smith, supra,* where an individual claimant asserted a prescriptive right to moor his houseboat in front of another person's privately owned lake front lot and to maintain a catwalk onto the owner's property, this court held that any prescriptive right there acquired was purely personal to the individual claimant. The prescriptive right belonged exclusively to the actual user, and not to guests or assignees. The private owner could therefore exclude all others from making any unapproved use of his property.

■■ As in *West v. Smith, supra,* the rights contended for here are in the nature of an easement in gross. Being a personal right, the rule is that one individual's prescriptive use cannot inure to the benefit of anyone else. Personal prescriptive rights are confined to the actual adverse user and are limited to the use exercised during the prescriptive period. *West v. Smith, supra; Kirk v. Schultz,* 63 Idaho 278, 119 P.2d 266 (1941); 2 G. Thompson, Thompson on Real Property, § 346, 264–66 (1961). The fact that hundreds of individuals have made use of respondents' property for the prescriptive period does not bar respondents from enjoining all future trespass to the property. Nor does the use of respondents' property by certain neighbors or friends or even total strangers accrue or inure to the benefit of others. We therefore hold that the "people of the State of Idaho" as distinguished from specific individuals cannot acquire prescriptive rights in and to private property absent some express statutory authority. The one situation where the legislature has allowed such public prescriptive rights is in public highways. When a right-of-way has been used by the general public for a period of five years and has been maintained at public expense, the right-of-way becomes a public highway. *See* I.C. § 40–103 and *Meservey v. Gulliford,* 14 Idaho 133, 93 P. 780 (1908). No similar statute applies to the facts of this case. The district court's denial of the prescriptive easement is affirmed.

B. Dedication.

Appellant contends that respondents have made an implied dedication of their property to the public. The district court put the burden on appellant to prove that respondents had by their acts or omissions intended to dedicate the land to public use. The court found that this burden had not been sustained. We concur.

The fundamental principles in this state regarding implied dedications are found in *Village of Hailey v. Riley,* 14 Idaho 481, 495, 95 P. 686, 691 (1908), quoted with approval in *Simmons v. Perkins,* 63 Idaho 136, 143, 118 P.2d 740, 744 (1941):

It is no trivial thing to take another's land without compensation, and for this reason the courts will not lightly declare a dedication to public use. It is elementary law that an intention to dedicate upon the part of the owner must be plainly manifest.

And while long continued user, without objection, and with the knowledge and

consent of the owner is some evidence of a right in the public, still there must be joined to that user an intention upon the part of the owner to dedicate, or no dedication will be consummated; for the long-continued user by the public without objection by the owner is entirely consistent with a license to the public to use the land, and therefore evidence of long-continued user alone will not support a finding of fact that a dedication was created. Neither will a finding of fact of mere long-continued user support a conclusion of law that a public highway was created. As previously stated, in order to constitute a dedication of a highway by evidence *in pais,* there must be convincing evidence that the owner intended to appropriate the land to the public use.

 Appellant urges this court to adopt the reasoning of the California per curiam decisions, *Gion v. City of Santa Clara* and *Dietz v. King,* 2 Cal.3d 29, 84 Cal.Rptr. 162, 465 P.2d 50 (1970), for the proposition that five years uninterrupted public use of private property creates a conclusive presumption of the owner's intent to dedicate. We decline the opportunity. Instead we adhere to the rule that a party claiming a right by dedication bears the burden of proof on every material issue. The intent of the owner to dedicate his land to public use must be clearly and unequivocally shown and must never be presumed. *Simmons v. Perkins, supra; Hamerly v. Denton,* 359 P.2d 121 (Alaska 1961); *City of Scottsdale v. Mocho,* 8 Ariz.App. 146, 444 P.2d 437 (1968); *Dept. of Natural Resources v. Mayor and Council of Ocean City,* 274 Md. 1, 332 A.2d 630 (1975); *Laug v. Ottowa County Road Comm.,* 37 Mich.App. 757, 195 N.W.2d 336 (1972); *Miller v. Roy W. Heinrich & Co.,* 257 Or. 155, 476 P.2d 183 (1970); *Shia v. Pendergrass,* 222 S.C. 342, 72 S.E.2d 699 (1952); *Bonner v. Sudbury,* 18 Utah 2d 140, 417 P.2d 646 (1966); *Cummins v. King County,* 72 Wash.2d 624, 434 P.2d 588

(1967); *Carr v. Hopkin,* 556 P.2d 221 (Wyo. 1976).

We find additional support for this rule in I.C. § 36–1604.[2] That statute contains the following statement of legislative purpose: "The purpose of this section is to encourage owners of land to make private land and water areas available to the public without charge for recreational purposes by limiting their liability toward persons entering thereon for such purposes." The statute then sets forth various provision by which the private owner will enjoy limited tort liability in actions brought by the recreational user. Although the legislative intent in limiting the tort liability of the generous private owner is not directly on point here, we find it applicable by analogy. It seems incongruous for the legislature expressly to encourage the private owner to make his land available for public recreation and for this court to simultaneously presume that the private owner has thereby dedicated his property to the public use.

The district court found as a fact that "none of the present defendants [respondents] nor any of their predecessors ever intended to make any dedication of the disputed area to public use . . .. The plaintiff [appellant] did not carry his burden of proof in this regard." Our review of the record discloses substantial and competent evidence to support this finding. Respondents exercised dominion over the property by at various times personally ousting unwelcome users; at other times they enlisted the aid of the city police to do so. Trash cans mistakenly put on the property by the city were ordered removed by respondents. The deed executed in 1923 by John Taylor and Edith Taylor, respondents predecessors in title, conveying to the City of Coeur d'Alene a public right-of-way to the lake over property located to the west of respondents' property expressly limited the public rights to the narrow right of way

---

**2.** I.C. § 36–2503, which was the predecessor of I.C. § 36–1604, was in effect when this action was tried and when the judgment was entered. I.C. § 36–1604 became effective January 1, 1977, as part of the 1976 amendments to Title

36 of the Idaho Code. The two statutes are identical in all material respects, and we cite to the currently effective statute only for easier reference.

and expressly prohibited interference with the rights of the private owners. This instrument, together with respondents' own affirmative acts of dominion and unequivocal testimony at trial negative any intent to dedicate the property to the public.

## C. Custom.

■ Another theory advanced by appellant is that the public has by customary usage acquired recreation rights to respondents' property. This theory is based upon the English common law of custom, defined as: "a usage or practice of the people, which, by common adoption and acquiescence, and by long and unvarying habit, has become compulsory, and has acquired the force of a law with respect to the place or subject-matter to which it relates." Black's Law Dictionary 461 (rev. 4th ed. 1968). By the law of custom, the general public could, after many years of unrestricted common usage, acquire rights over private property. *Post v. Pearsall,* 22 Wend. 425 (N.Y.Ct.Err. 1839); 2 W. Blackstone, Commentaries 263; 2 G. Thompson, *supra,* § 335.

The acquisition of a right through custom in England required that the use "must have continued from time immemorial, without interruption, and as a right; it must be certain as to the place, and as to the persons; and it must be certain and reasonable as to the subject matter or rights created." 3 H. Tiffany, Law of Real Property, § 935 at 623 (3d ed. 1939). *See also* 1 W. Blackstone, Commentaries 75–78; 3 Powell, *supra,* § 414[9]; *Public Access* to *Beaches,* 22 Stanford L.Rev. 564, 582 (1970); 25 Univ. of Florida L.Rev. 586, 591 (1973). Virtually all commentators are agreed that, until recently, the law of custom was a dead letter in the United States. Aside from two New Hampshire cases decided in the 1850's no state had applied the doctrine. As recently as 1935 New York refused to accept customary usage as a means of claiming an easement in a private beach for bathing and boating. *Gillies v. Orienta Beach Club,* 159 Misc. 675, 289 N.Y.S. 733 (1935). The doctrine was exhumed, however, by the Supreme Court of Oregon in *State ex rel. Thornton v. Hay,* 254 Or. 584, 462 P.2d 671 (1969), where it was held that the public had acquired customary rights to a privately owned dry sand stretch of beach on the Oregon sea coast. Because of the tract-by-tract limitations inherent in the prescription theory, the Oregon court chose to apply custom to claimed public use of oceanfront lands.

Whether the doctrine exists in this state is a matter of first impression. I.C. § 73–116 provides that "[t]he common law of England, so far as it is not repugnant to, or inconsistent with, the constitution or laws of the United States, in all cases not provided for in these compiled laws, is the rule of decision in all courts of this state." There being no statute which expressly or impliedly rejects the doctrine of custom, this court is of opinion that the doctrine does obtain in Idaho. *See Industrial Indem. Co. v. Columbia Basin Steel & Iron, Inc.,* 93 Idaho 719, 471 P.2d 574 (1970).

■ The district court applied the law of custom to the facts of this case and concluded that the requisite elements had not been established. The first element, use from time immemorial, means that the use has existed for so long that "the memory of man runneth not to the contrary." *State ex rel. Thornton v. Hay, supra,* 462 P.2d at 677. In the instant case, the district court found that usage commenced as early as 1912. We agree with the district court that this does not constitute "from time immemorial." The second requirement, that the use must be uninterrupted, is not met because of the fact that respondents had personally and with police assistance removed members of the public from their land. Without further burdening this opinion, suffice it to say that of the seven essential elements of a customary right, the trial court found adversely to appellant on six of them. We find ample evidence in the record to support the findings, and we therefore affirm the district court's denial of any customary rights in this case.

## D. Public Trust.

■ Appellant's final argument is that respondents' lake front property is imbued

with a public trust under the principles of the public trust doctrine. That doctrine's leading authority, Professor Sax of the University of Michigan School of Law, articulates the following as the "central substantive thought in public trust litigation":

> [w]hen a state holds a resource which is available for the free use of the general public, a court will look with considerable skepticism upon *any* governmental conduct which is calculated *either* to relocate that resource to more restricted uses *or* to subject public uses to the self-interest of private parties.

J. Sax, *The Public Trust Doctrine in Natural Resource Law: Effective Judicial Intervention,* 68 Mich.L.Rev. 473, 490 (1970) (emphasis in text).

It is undisputed that the land in contention here is private property, traceable to a patent from the United States Government in 1892. It is also undisputed that the seawall constructed by respondents lies above the ordinary mean high water mark of the lake and that it in no way interferes with navigability or the public's use of the lake's waters. Since no natural resource owned by the state is involved here the public trust doctrine is inapposite. The district court judgment is affirmed in all respects. Costs to respondents.

DONALDSON, BAKES, and BISTLINE, JJ., concur.

SCOGGIN, J., pro tem., dissents.