812 P.2d 316

**Lamar BURNETT and Christine Burnett, husband and wife, Plaintiffs–Respondents,**

v.

**Paul JAYO, Steve Jayo and Paul V. Jayo, Defendants–Appellants.**

**No. 16806.**

Court of Appeals of Idaho.

June 4, 1991.

---

Robert P. Tunnicliff, Moscow, for defendants-appellants.

Marcus, Merrick & Montgomery, Boise, for plaintiffs-respondents. Claude V. Marcus argued.

SWANSTROM, Judge.

Lamar and Christine Burnett filed this action against Paul Jayo and his sons, Steve and Paul V. (Jayos), seeking damages for trespass upon the Burnetts' property and for battery upon Lamar Burnett. The Jayos counterclaimed, seeking to enjoin the Burnetts from interfering with easements claimed by the Jayos over the Burnett property. The trial of these issues was bifurcated. The district judge, without a jury, first tried the counterclaim issues, deciding that the Jayos did not have any easements over the Burnetts' property. Before the judge filed his memorandum decision regarding the easements, the trespass, battery and damage claims of the Burnetts were submitted to a jury. The jury found that the Jayos had committed trespass and battery and awarded compensatory and punitive damages to the Burnetts. The Jayos appeal, contending that the district court erred:

1. In finding that use of the roads and trails on the Burnetts' land by the Jayos and the Jayos' predecessor was permissive.
2. In concluding that the Jayos did not have easements, prescriptive in nature, across the Burnett property.
3. By not deciding the easement issues *before* commencement of the jury trial on the trespass, battery and damage issues.
4. In giving its instructions to the jury on the issue of trespass.

We will first discuss the issues relating to the easements claimed by the Jayos. The facts relative to this discussion are as follows.

The Jayos are cattle ranchers. In November, 1975, they entered into a lease with a purchase option covering several thousand acres of mostly grazing land lying between the Snake River on the west and the Salmon River on the east in Idaho County. Each year since 1975 the Jayos have placed large numbers of cattle on this property. In the winter some of these cattle are brought to feeding grounds near the Salmon River. Some hay is grown in this location also. Irrigation and stock water is supplied from two streams, Christie Creek and Sherwin Creek, flowing easterly to the Salmon River. The Jayos' predecessor in interest, Circle C Ranch, built a new ranch house on Sherwin Creek in the late 1950's to serve as a "headquarters" for this part of the ranching operations. In 1980, the Jayos exercised their option to purchase this ranch from Circle C.

Access to the Jayos' property from the Salmon River side is limited. Highway 95 runs along the easterly side of the Salmon River in this area. For the most part, the river terrain is rocky and steep. No bridges exist for miles in either direction from Sherwin Creek. Historically, access to the ranch house, hayfields and feeding grounds has primarily been by boat from the highway side to either of two landings on the westerly side. Both of these landings are on property known as the Stanton Eddy Placer, an old patented mining claim.

The Stanton Eddy Placer is a strip of land running north and south along the river for about three-fourths of a mile, containing about forty-one acres. Sherwin Creek bisects the strip; Christie Creek crosses at the north end. Mr. Jayo testified that when he entered into the lease-option agreement with Circle C in 1975, he expected to acquire the Stanton Eddy Placer through Circle C. However, this did not occur. Instead, the Burnetts purchased this property in 1982 from several heirs of its former owners who were named Sherwin.

At least as early as 1928, employees of Circle C Ranch regularly crossed the Salmon River to either the "upper landing" or the "lower landing" on the Stanton Eddy Placer to reach the property now owned by the Jayos. The employees frequently traveled from either of the two landings by foot, horseback, wagon or vehicle to the ranch house or the hayfields. The upper landing also was the terminus of a trail leading up river to the town of Lucile or to other parts of the ranch. Three former employees of Circle C testified that these uses were frequent and were continuous over certain routes from 1928 until Circle C leased to the Jayos in 1975. This testimony was not disputed. Mr. Jayo testified that these same uses continued while the Jayos were in possession of the ranch.

A claimant, in order to acquire a prescriptive easement in Idaho, must present reasonably clear and convincing evidence of open, notorious, continuous, uninterrupted use, under a claim of right, with the knowledge of the owner of the servient estate for the prescriptive period. *State ex rel. Haman v. Fox*, 100 Idaho 140, 594 P.2d 1093 (1979); *West v. Smith*, 95 Idaho 550, 511 P.2d 1326 (1973); *Kaupp v. City of Hailey*, 110 Idaho 337, 715 P.2d 1007 (Ct.App.1986). The prescriptive period in Idaho is five years. I.C. § 5–203. . . .

> [P]roof of open, notorious, continuous, uninterrupted use of the claimed right for the prescriptive period, without evidence as to how the use began, raises the presumption that the use was adverse and under a claim of

right. The burden is then on the owner of the servient tenement to show that the use was permissive, or by virtue of a license, contract, or agreement. [Footnotes omitted.]

*West v. Smith,* 95 Idaho at 557, 511 P.2d at 1333. This rule has been repeatedly upheld. *Gibbens v. Weisshaupt,* 98 Idaho 633, 570 P.2d 870 (1977); *Kaupp v. City of Hailey, supra.* One exception to this rule ... occurs when the servient land is wild, unenclosed, or unimproved. Then the presumption is that the use was permissive. *West v. Smith, supra. See e.g. Christle v. Scott,* 110 Idaho 829, 718 P.2d 1267 (Ct.App.1986).

*Melendez v. Hintz,* 111 Idaho 401, 404, 724 P.2d 137, 140 (Ct.App.1986).

In the present case, the Jayos presented "proof of open, notorious, continuous, uninterrupted use of the claimed right for the prescriptive period" commencing in 1928. *West v. Smith,* 95 Idaho at 557, 511 P.2d at 1333. The Burnetts, as the owners of the "servient tenement," produced no evidence "to show that the use was permissive, or by virtue of a license, contract, or agreement" when the use originated. *Id.* However, some evidence did come in concerning a later period of time through the testimony of Ellis Sherwin, one of the former owners of the Stanton Eddy Placer. He was asked: "How—do you know how the access—how Circle C Ranch Company got access to the hayfields [on the Circle C property]?" Sherwin's reply was: "I don't think I know about it. We leased them the ground. It was probably around '55, and they never paid for any leasing, and they just went ahead and used it and nobody seemed to care."

All parties assume that Sherwin's statement, "We leased them the ground," referred to the Stanton Eddy Placer although Sherwin was never asked to explain his statement or to give any further information about the "lease." The Burnetts contend that Sherwin's testimony shows that Circle C's use of the Stanton Eddy Placer was permissive, at least since 1955. On the other hand, the Jayos contend that Circle C's use of the Sherwins' property without payment of any rent was an adverse use known to the Sherwins. The district judge mentioned the lease evidence in his memorandum decision, but seemingly placed little reliance upon it in finding that the Jayos' use of roads on the Stanton Eddy Placer was permissive.

■ The weight to be given this evidence of a "lease" from the Burnetts' predecessors to the Jayos' predecessors is to be determined by the trial judge. However, at best, the evidence is vague and inconclusive. Moreover, it tells us nothing about the use of the *roads* on the Stanton Eddy Placer by Circle C at the critical time when such use originated. Nor does this evidence have any bearing on the use which occurred between 1928 and 1955, a period of twenty-seven years. If Circle C's use of the roads during this time was adverse to the owners of the Stanton Eddy Placer, for any continuous five-year period, then Circle C could have established a prescriptive right to continue using the *roads,* lease or no lease. Even if Circle C in 1955 leased the whole "ground" of the Stanton Eddy Placer for grazing or feeding cattle or growing hay, that would not affect Circle C's established right to use those roads as they had been used for decades before the lease. Likewise, whether Circle C ever paid the Sherwins any rent for the "ground" is not probative of whether Circle C's use of the *roads* was permissive or adverse. For these reasons, we conclude that the "lease" evidence has no bearing on whether Circle C had a prescriptive right to use roads crossing the Stanton Eddy Placer as of 1975 when Jayo took over possession of the ranch property from Circle C under the lease-option agreement.

■ For five years, the Jayos were lessees of Circle C. As noted earlier, at first the Jayos merely continued to use the landings and the roads on the Stanton Eddy Placer as Circle C had done. This substitution in occupancy of the Circle C property by the Jayos did not, by itself, cause the Jayos' use of the roads across the Stanton Eddy Placer to become hostile and adverse to the owners. This Court has held that "such a continuous use alone—without a finding that the transferee repudiated its

license and actually or constructively communicated to the owner of the servient estate an intention to adversely and hostilely establish a prescriptive easement—will not support the conclusion that a prescriptive easement resulted." *Branson v. Miracle,* 111 Idaho 933, 935, 729 P.2d 408, 410 (Ct.App.1986). *See also, Webster v. Magleby,* 98 Idaho 326, 563 P.2d 50 (1977). Therefore, if Circle C's use of the roads was permissive only, without a prescriptive right having been acquired by 1975, then the Jayos' use began by permission also.

As we discuss later, the Jayos' use of the Stanton Eddy Placer property clearly became hostile and adverse to the owners shortly after the Jayos exercised their option to purchase the adjoining ranch from Circle C in 1980. However, this hostile and adverse use did not continue for five years before the Burnetts commenced this action in February, 1984. Accordingly, we hold that the Jayos' claim for prescriptive easements turns on whether Circle C acquired such easements by its long and continuous use of roadways or trails on the Stanton Eddy Placer for access to the adjoining Circle C ranch property.

The district court denied the Jayos' claim of prescriptive easement. The court found that the Jayos had crossed the real property with their cattle operation in five different locations. The court also found, after an on-site inspection, that the real property was "unimproved, wild, and remote," therefore concluding there was a presumption of permissive use by the Jayos. The court further found the parties had stipulated that the real property was in fact unimproved, remote and wild.

I

■ Findings by the district court, if supported by substantial evidence in the record, will not be disturbed on appeal. I.R.C.P. 52(a); *State ex rel. Haman v. Fox,* 100 Idaho 140, 594 P.2d 1093 (1979). The parties stipulated that the real property consisted of open range that was undeveloped, unimproved, unenclosed, wild and remote. The district court in this case conducted an on-site inspection of the real property prior to its characterization as unimproved, wild and remote. However, the Jayos argue that the oral stipulation was not binding because evidence introduced at trial was contrary to the stipulated facts. *See Hahn v. National Casualty Co.,* 64 Idaho 684, 136 P.2d 739 (1943).

■ A stipulation entered into improvidently or inadvertently may be set aside in a court's sound discretion where the parties would be put in the same position as before the stipulation was entered. *Call v. Marler,* 89 Idaho 120, 403 P.2d 588 (1965), *citing Koepl v. Ruppert,* 29 Idaho 223, 158 P. 319 (1916). The Jayos point to evidence showing that the real property in question contains substantial improvements including roads, ditches, culverts, feed pens and bridges.

It is undisputed that primitive roads existed on the Stanton Eddy Placer property for many years before the Jayos' use began. The Jayos' evidence showed they improved the roads by "cat" work and by replacing worn out culverts with new culverts. For the most part, this work was as consistent with a permissive use as with an adverse use. This changed, however, after the Burnetts bought the property. The Jayos tore out an old bridge, replacing it with a large culvert and realigned a road across Sherwin Creek. To provide an alternate access to the Salmon River side of their property, the Jayos built a new road down Christie Creek. Sometime after 1980, the Jayos connected this road to an existing "hayfield road" on the Stanton Eddy Placer. By these "improvements," as well as by other actions taken about this time, the Jayos manifested an intent to use the Stanton Eddy Placer property, including the roads, adversely to the Burnetts. On the other hand, there was sufficient, although disputed, evidence to support a finding that before 1980 the Stanton Eddy Placer was "undeveloped, unimproved [and] unenclosed." To this extent, the evidence supported the parties' stipulation which was made after an on-site inspection of the property with the judge. We do not view the stipulation as controlling, however, because it does not address the critical time period.

■ The critical time period, as we have suggested, is when the use of the roads or trails commenced by the Jayos' predecessors. Because, if the presumption applies that the use was permissive when it commenced, then the use continues to be permissive until a hostile and adverse use is clearly manifested and "brought home" to the owners of the servient property. *Branson v. Miracle, supra.* Accordingly, we turn back to the rule which determines—in the absence of evidence as to how the use originated—the presumption which should be applied.

■ In *Cox v. Cox,* 84 Idaho 513, 373 P.2d 929 (1962), our Supreme Court cited well-established authority in adopting the following view:

> This general rule fixing the presumption of adverse use is applicable to improved lands, and the lands cultivated and enclosed. However, when one claims an easement by prescription over *wild or unenclosed* lands of another, mere use of the way for the required time is not generally sufficient to give rise to a presumption that the use is adverse. [Citations omitted.]

84 Idaho at 522, 373 P.2d at 934 (emphasis added). The Court repeated this holding in *Trunnell v. Ward,* 86 Idaho 555, 389 P.2d 221 (1964), making it clear that the general rule is not applicable to unimproved lands. This is still the law today. *See West v. Smith, supra; Christle v. Scott, supra.*

■ Here, all of the evidence indicates that when Circle C began crossing the Salmon River at the Stanton Eddy Placer in 1928, or before, the property was "undeveloped, unimproved and unenclosed." Therefore, in absence of any evidence as to how this use originated, we must presume that Circle C's use of the primitive roads and trails across the Stanton Eddy Placer was permissive in nature. On this basis we uphold the district court's ruling that the Jayos' use was permissive until 1980. The hostile and adverse use thereafter did not continue for five years before this action was commenced. Accordingly, we affirm the district court's decision which denied the Jayos' claim of prescriptive easements.

## II

The Jayos contend that the district court erred by not deciding the prescriptive easement issue before commencement of the jury trial on the trespass, battery and damage issues. The Jayos argue that if the jury had been instructed that the Jayos had a legal right to use the roads on the Stanton Eddy Placer, the jury either would not have awarded punitive damages for the trespass, or the punitive damage award would have been smaller. Because we have held that the Jayos did not have a prescriptive right to use the roads when the trespasses occurred, we conclude that they were not prejudiced in the jury trial by the failure to have a favorable instruction on this point.

## III

■ The Jayos contend that the district court's jury instruction regarding willful trespass was legally unsound. Appellate review of jury instructions is limited to an evaluation of whether the instructions, considered as a whole, and not individually, fairly and adequately represent the issues and state the applicable law. *In re Estate of Roll,* 115 Idaho 797, 770 P.2d 806 (1989). No error is committed if the jury instructions meet this criteria. *McBride v. Ford Motor Co.,* 105 Idaho 753, 673 P.2d 55 (1983).

■ By Instruction No. 10 the jury was told that a willful trespass would have been committed by the Jayos if the jury found the Jayos had intentionally built and maintained feed bunkers on the Burnett property and placed salt and hay on the Burnett property for the purpose of feeding the Jayos' cattle thereon. Again, the Jayos contend that their easement rights entitled them to use the roads for hauling hay and other purposes. Even if this were true, or if they had permission to use the roads, there was ample evidence in the record showing that the Jayos engaged in other deliberate, hostile activity after the Burnetts notified them that they could not feed or maintain their cattle upon the property.

Such evidence showed that the Jayos had cut and removed hay, removed survey stakes, dumped dead animals, and piled discarded machinery and other debris on the property. After the Burnetts attempted to fence out the cattle, the Jayos opened gates, removed locks, cut the fence and tore down "No Trespassing" signs. We conclude that the Jayos have shown no harm from the giving of Instruction No. 10.

The Jayos also contend that the court erred in failing to give their requested jury Instruction No. 14. We have examined that requested instruction and have considered the appellants' arguments in light of the evidence in this case. We conclude that the court committed no error in refusing to give this instruction.

## IV

The Burnetts have requested an award for their attorney fees on appeal, contending that this appeal was brought unreasonably or without foundation. However, we cannot say that the appeal was brought or pursued frivolously, unreasonably or without foundation. *See Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979). We therefore decline to award attorney fees on appeal. As the prevailing party, the Burnetts are entitled to recover their costs on appeal pursuant to I.A.R. 40. In conclusion, we uphold the district court's decision emanating from the court trial on the easement issue. We also affirm the judgment issued upon the jury's verdict in the damage trial. We award costs to respondents Burnett. No fees awarded.

WALTERS, C.J., concurs.

BURNETT, J., having participated in the oral arguments, voted to affirm but resigned from office before the foregoing opinion was prepared.