752 P.2d 625

**R.T. NAHAS CO., a California corporation, Robert T. Nahas and Eva C. Nahas, Plaintiffs–Respondents,**

v.

**Jay H. HULET and Gertrude Hulet, husband and wife, Defendants–Appellants.**

**No. 16556.**

Court of Appeals of Idaho.

Feb. 3, 1988.

Philip A. Peterson of White, Ahrens, Peterson & Perry, Nampa, for defendants-appellants.

James W. Kiser, Boise, for plaintiffs-respondents.

Jim Jones, Atty. Gen., A. Lynne Krogh–Hampe, Deputy Atty. Gen., for amicus curiae.

SWANSTROM, Judge.

This is the second appeal arising from a dispute over the appropriation of water from Sinker Creek, a tributary of the Snake River located in Owyhee County. Jay and Gertrude Hulet (Hulet) appeal from a judgment of the district court awarding damages to downstream appropriators, the R.T. Nahas Co. and Robert and Eva Nahas (Nahas). We are presented with several questions: (1) whether a statutory permit entitled the defendant to im- pound the flow of Sinker Creek regardless of prior downstream use by another irrigator; (2) whether the trial court erred in concluding that the defendant's actions were the cause of the plaintiff's damages; (3) whether the trial court abused its discretion by accepting a late-filed affidavit of an expert witness; (4) whether the plaintiff's mitigation efforts were reasonable; (5) whether the trial court properly awarded punitive damages; and (6) whether the trial court abused its discretion in awarding costs and attorney fees to the plaintiff as the prevailing party. For reasons explained below, we affirm the judgment in part, vacate in part, and remand for further proceedings.

The underlying facts may be stated briefly. In 1969, Nahas purchased land along Sinker Creek. A lake located on the property was filled each year by diverting the winter runoff from the creek. The stored lake water was then used during the latter part of the crop season for irrigation when Sinker Creek became dry. Nahas' water right had never been formally adjudicated. However, Nahas claimed a "constitutional" or "historical" right to. the water based upon actual diversion, storage, and beneficial use.[1] In 1976, Hulet constructed a dam across Sinker Creek upstream from the Nahas diversion. The dam was built pursuant to a water permit listing a priority date of October 28, 1975. From 1976 until 1981, Hulet impounded the winter flows of Sinker Creek, depriving Nahas of water historically used to fill the lake.

Nahas subsequently filed suit seeking a declaration of quiet title to his water right, an injunction against further interference by Hulet, and damages for the interference which had already occurred. The district court bifurcated the proceeding. The first trial adjudicated Nahas' constitutional right and accorded Nahas a priority date of April 1, 1966—a right senior to Hulet's statutory right by permit. Accordingly, the district court concluded that Hulet had wrongfully interfered with Nahas' senior appropria-

---

1. Nahas' predecessor also had used the lake water. He had applied for a statutory use permit but apparently never had "perfected" his right. *See* I.C. § 42–201. Therefore, Nahas' water right remained unadjudicated until the first trial in this case in 1981.

tion. On appeal, we affirmed this ruling. *R.T. Nahas Co. v. Hulet*, 106 Idaho 37, 674 P.2d 1036 (Ct.App.1983). A trial then was held to determine the amount of damages appropriate to compensate for the wrongful interference. The trial court ultimately awarded Nahas $61,228.01 for crop losses, extra power and well-drilling expenses, punitive damages, costs, and attorney fees. This appeal followed.

I

Hulet first contends that the trial court erred in determining that he was liable for interference with Nahas' water right. He argues that he held a statutory preference to the water by virtue of having obtained a permit from the Department of Water Resources. Hulet would have us hold that a valid permit confers a right superior to an unadjudicated constitutional water right. We are unpersuaded.

Hulet's argument is based upon I.C. § 42–607 which provides:

It shall be the duty of said watermaster to distribute the waters of the public stream, streams or water supply, comprising his water district, among the several ditches taking water therefrom according to the prior rights of each respectively, in whole or in part, and to shut and fasten, or cause to be shut or fastened, under the direction of the department of water resources, the headgates of the ditches heading from such stream, streams or water supply, when in times of scarcity of water it is necessary so to do in order to supply the prior rights of others in such stream or water supply; provided, that *any person or corporation claiming the right to the use of the waters of the stream or water supply comprising a water district, but not owning or having the use of an adjudicated or decreed right therein, or right therein evidenced by permit or license issued by the department of water resources, shall, for the purposes of distribution during the scarcity of water, be held to have a right subsequent to any adjudicated, decreed, permit, or licensed right in such stream or water*

*supply,* and the watermaster shall close all headgates of ditches or other diversions having no adjudicated, decreed, permit or licensed right if necessary to supply adjudicated, decreed, permit or licensed right in such stream or water supply. So long as a duly elected watermaster is charged with the administration of the waters within a water district, no water user within such district can adversely possess the right of any other water user. [Emphasis added.]

Hulet urges that the language emphasized above gives his claim superiority over rights that are unadjudicated. We cannot construe the statute in this manner. To do so, we would be obliged to ignore well-settled precepts of this state's water law.

It is the long-standing rule in Idaho that, as between competing appropriators of water, "the first in time is first in right." I.C. § 42–106. *See also Beecher v. Cassia Creek Irrigation Company, Inc.*, 66 Idaho 1, 154 P.2d 507 (1944); *Nielson v. Parker*, 19 Idaho 727, 115 P. 488 (1911). Each junior appropriator is entitled to divert water only when the rights of previous appropriators have been satisfied. *Beecher v. Cassia Creek Irrigation Company, Inc., supra.* The right to divert and use the unappropriated water of any natural stream is guaranteed by the Idaho Constitution in article 15, § 3. Until the law was changed in 1971, *see* 1971 Idaho Session Laws, ch. 177 at 843, a person desiring to appropriate the water of a stream could do so either by actually diverting the water and applying it to a beneficial use or by pursuing the statutory method, which entailed an application to the Department of Water Resources for a permit and then fulfilling the requirements of the permit. *Cantlin v. Carter*, 88 Idaho 179, 397 P.2d 761 (1964). Since 1971 the exclusive way to acquire a water right has been by the permit method. Nevertheless, those rights acquired by the so-called constitutional method prior to that time are still valid. I.C. §§ 42–103, 42–201. Thus, an appropriator, whose right is based upon a valid, although unadjudicated, constitutional method of appropriation, retains a senior claim in relation to a person holding a later issued

permit. *See State ex rel. Tappan v. Smith,* 92 Idaho 451, 444 P.2d 412 (1968).

Idaho Code § 42–607 does not alter the doctrine of prior appropriation as applied to private water right disputes. Rather, the statute, in clear and unambiguous terms, governs the duties of the state's agent—the watermaster. It directs the watermaster to prefer rights of record when he is distributing water within his district in times of scarcity. *See, e.g., Nettleton v. Higginson,* 98 Idaho 87, 558 P.2d 1048 (1977) and *DeRousse v. Higginson,* 95 Idaho 173, 505 P.2d 321 (1973). The *Nettleton* opinion reveals that the preference which I.C. § 42–607 gives to decreed rights and to rights evidenced by permits and licenses (recorded rights) reflects the Legislature's awareness of the difficulties facing a *watermaster* in the exercise of his duties in times of water scarcity. The statute obviously is intended to make the authority of the watermaster more certain, his duties less difficult and his decisions less controversial. However, nowhere in *Nettleton* is there a hint that I.C. § 42–607 applies outside its own language to subordinate constitutional water rights for all purposes. It does not authorize one water user unilaterally to interfere with another's superior rights. The statute is not applicable to private disputes such as the present case. Such disputes remain controlled by the doctrine of prior appropriation.

Here it is uncontroverted that Hulet's water right was junior to that of Nahas and that Hulet's impoundment of water interfered with Nahas' senior entitlement. Accordingly, Hulet is liable for any damages caused by the wrongful interference. *Beecher v. Cassia Creek Irrigation Company, Inc., supra.*

## II

Hulet next challenges the trial court's determination that his actions were the cause in fact of Nahas' damages.[2] Nahas counters that this issue was settled at the first trial and cannot now be contested.

This assertion is not entirely accurate. The court's findings after the first trial were that from 1966 through 1976 the Nahas lake was filled completely prior to April 1 each year. The trial court found further that after the Hulet dam was built, Nahas was unable to fill the lake, and that the impoundment of the water from the creek was the cause of the inability to fill the lake. However, the first trial did not resolve specifically the question whether crop losses were caused by the lower water level in the lake.

At the second trial Hulet contended that Nahas' damages were caused not by his actions but by Nahas' poor water management in 1977—a drought year. Hulet presented an expert witness who testified that power records for the years 1977 and subsequent years indicated that Nahas was actually pumping more water from the lake than he had prior to 1977. Nahas countered this testimony with another expert who stated that the raw power figures were misleading. He explained that because Nahas had switched from gravity irrigation to a combination of gravity and sprinkler irrigation in 1977, power usage necessarily had increased significantly. This was so, the expert explained, because more power is needed to pump the same amount of water for sprinkler irrigation than for gravity irrigation. The expert concluded that although the total kilowatts used may have increased, Nahas actually may have pumped less water in 1977 than in preceding years. Nahas also presented evidence that the lower water level in the lake had caused crop damage and that he had been forced to drill wells to provide additional sources of irrigation.

Thus the evidence as to the cause of crop losses was conflicting. However, the trial judge found Nahas' proof more convincing. The question of causation is a question of fact. Findings of fact will not be disturbed on appeal unless they are clearly erroneous. I.R.C.P. 52(a). Clear error, in turn, will not be deemed to exist if the findings

2. The dollar amounts claimed by Nahas are not in dispute. At trial the parties stipulated to the costs of pumping and well drilling, as well as to the decrease in crop yield that Nahas claimed as a result of interference with the flow of water in Sinker Creek during 1977.

are supported by substantial and competent, though conflicting, evidence. *Rasmussen v. Martin*, 104 Idaho 401, 659 P.2d 155 (Ct.App.1983). Here, the judge's findings were supported by substantial evidence and we will not disturb them. We uphold the award of damages for the crop losses.

## III

Hulet raises another issue related to the use of expert testimony in this case. He contends that the trial judge abused his discretion by accepting a late-filed affidavit from Nahas' expert. We find no such abuse.

Hulet's expert prepared a graph of Nahas' pumping costs from 1975 to 1981. The graph was admitted into evidence. Near the end of the trial, it was discovered that the factual basis for the exhibit was erroneous. To remedy the problem, the court opted to allow thirty days for submission of affidavits from each side's expert and, thirty days later, submission of simultaneous briefs. Hulet complied with the affidavit deadline. Nahas did not. The affidavit of Nahas' expert was filed three days late. Hulet did not learn of the Nahas affidavit until he received a copy of Nahas' brief. Hulet moved to disregard the affidavit. However, the court denied the motion.

We agree that it would have been preferable for the affidavit to be timely filed. However, we cannot say that the trial court's decision to accept the tardily filed document was improper. The trial judge is empowered to exercise his discretion in controlling the conduct of a trial and the presentation of evidence. *See* IDAHO TRIAL JUDGES MANUAL, *Evidence, Court Procedure* § 9.11 (1979). Having established the thirty-day time frame for the submission of the affidavits, the judge was entitled to extend the deadline. Furthermore, Hulet has demonstrated no unfair prejudice resulting from the judge's decision. Hulet could have sought additional time to respond to the affidavit. He did not do so. Absent a showing of unfair prejudice, we cannot say that the trial judge abused his discretion.

## IV

We next address an issue concerning mitigation of damages. Hulet argues that Nahas' well drilling entailed an unreasonable expense. The district court found that "in *attempting* to mitigate his damages; [Nahas] incurred well drilling costs ... in the sum of $8,595.25." (Emphasis added.) It was undisputed that these wells proved only partially productive. Of course, the court awarded Nahas the full amount of the cost of drilling plus additional pumping costs incurred in the amount of $4,300.

Nahas is entitled to recover costs reasonably expended to minimize the damages from wrongful impoundment of the Sinker Creek water. *See Eliopulos v. Kondo Farms, Inc.*, 102 Idaho 915, 643 P.2d 1085 (Ct.App.1982). Of course, the costs incurred must be reasonable. *E.g., Casey v. Nampa and Meridian Irrigation District*, 85 Idaho 299, 379 P.2d 409 (1963). In this case, the evidence indicated that the reduced flow of water caused harm to Nahas' crops. Prompt action was necessary to preserve the crop. However, the district judge's findings do not indicate specifically whether the course of action selected by Nahas was reasonable under the circumstances. Neither does the language of the judge's decision allow us to say that reasonableness was considered and decided implicitly. Because the answer to this question is not obvious from the record on appeal, the case must be remanded. *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 646 P.2d 988 (1982).

## V

Next we address the issue of punitive damages. Hulet contends that the trial court's award was an abuse of discretion because Hulet believed in good faith that I.C. § 42–607 entitled him to impound water from Sinker Creek pursuant to his statutory permit. The district court found that if Hulet had not constructed the dam, he would have incurred an expense of $13,157 to pump the same amount of water from the Snake River. The court further determined that

the defendant's taking of the plaintiffs' water was willful and was motivated by his desire to save the higher costs of river pumping; the defendant refused to release water from his dam so that the plaintiff could fill his lake as he had prior to the defendant's impounding of his water. The Court finds that the defendant's actions were oppressive, and that the defendant should not retain the savings resulting from his actions.

Accordingly, the court awarded the sum of $13,157 to Nahas as punitive damages.[3]

██ Our Supreme Court recently summarized the criteria for awarding punitive damages in Idaho.

Punitive damages are "not favored in the law and therefore should be awarded only in the most unusual and compelling circumstances." *Cheney v. Palos Verdes Investment Corp.*, 104 Idaho 897, 904-05, 665 P.2d 661, 668-69 (1983). The policy behind such damages is deterrence rather than punishment. *Id.* at 905, 665 P.2d at 669. "An award of punitive damages will be sustained on appeal only when it is shown that the defendant acted in a manner that was 'an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences.'" *Id.* (Citation omitted.) "The justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that state be termed 'malice, oppression, fraud, or gross negligence.'" *Id.*, quoting *Morrison v. Quality Produce, Inc.*, 92 Idaho 448, 450, 444 P.2d 409, 411 (1968).

*Soria v. Sierra Pacific Airlines, Inc.*, 111 Idaho 594, 610-11, 726 P.2d 706, 722-23 (1986). When a trial court has made a punitive award, our standard of review is whether substantial evidence supports the determination that the requisite factual criteria have been satisfied. *Edmark Motors,*

*Inc. v. Twin Cities Toyota, Inc.*, 111 Idaho 846, 727 P.2d 1274 (Ct.App.1986).

██ In the present case, we believe the record lacks substantial evidence that Hulet's actions were an "extreme deviation from reasonable standards of conduct" or were the product of an "extremely harmful state of mind." Hulet arguably relied upon his water permit in diverting the water. Certainly Hulet was motivated by monetary gain. However, standing alone this is an insufficient basis upon which to find that the criteria for punitive damages have been satisfied. Furthermore, the trial court's finding of "oppressiveness" is not supported by the record. It is true that Hulet violated the eventually determined water right of a neighbor. However, at that time the scope of Nahas' right was uncertain; it was not adjudicated until the 1981 trial. All of the acts complained of took place before Nahas had his rights adjudicated. Although we do not suggest that interference with unadjudicated rights never can satisfy the criteria for punitive damages, we hold that the record in this case falls short of showing the extreme circumstances required for such an award. *Compare Village of Peck v. Denison*, 92 Idaho 747, 450 P.2d 310 (1969) (punitive damages properly awarded against defendants who threatened to disrupt village water supply by disconnecting water system, putting debris in springs, threatening to kill persons who attempt to repair the system, and threatening to build a feed lot near the spring in order to contaminate the water). Accordingly, on remand the judgment must be modified to delete the award of punitive damages.

VI

██ Finally, Hulet contends that the district court erred in awarding costs and attorney fees to Nahas as the prevailing party. We need not address this issue here since the judgment is being vacated and the case is being remanded. After the district court resolves the issue of reason-

---

**3.** We note that this amount did not include any offset for the cost of constructing and maintaining the dam. Consequently, if the judge's intent was to deny Hulet the benefit of his own wrongful conduct, the award may have exceeded its purpose.

able mitigation and enters a modified judgment consistent with this opinion, it may redetermine the prevailing party and award costs or attorney fees as it deems proper under applicable versions of I.R.C.P. 54(d)(1) and 54(e)(1).[4] For guidance on remand, we will address the contention that an award of attorney fees under I.C. § 12–121 requires a finding by the trial court that the case was defended frivolously, unreasonably or without foundation. This case was filed before March 1, 1979, the effective date of I.R.C.P. 54(e)(1). Thus, an award of fees under I.C. § 12–121 was not contingent upon a finding that the case was defended frivolously, unreasonably or without foundation. Standing alone I.C. § 12–121 gave the district court broad discretion to award attorney fees. *Haskin v. Glass*, 102 Idaho 785, 640 P.2d 1186 (Ct.App.1982).

The judgment of the district court is vacated. The case is remanded for proceedings in accordance with this opinion. The court may, in its discretion, act upon the existing record or take additional evidence on the question of reasonable mitigation. When a modified judgment is entered, it shall bear interest from the date of the original judgment. Costs on appeal to respondents, Nahas. No attorney fees awarded.

WALTERS, C.J., and BURNETT, J., concur.

---

**4.** Hulet also contends—relying on former I.R.C.P. 54(d)—that Nahas failed to file his memorandum of costs with the Clerk of the District Court of Owyhee County within ten days after entry of judgment. This issue is now moot. However, we do note that Hulet's argument is without merit. Nahas timely served a copy of the document on opposing counsel. The memorandum was then timely "filed" directly with the judge in open court after the court's decision had been made. This sequence of events satisfies the filing requirement of Rule 54(d). *See* I.R.C.P. 5(e).