646 P.2d 453

Harriett McLAUGHLIN,
Plaintiff-Appellant,

v.

Logan Dean ROBINSON,
Defendant-Respondent,

and

Wayne Loveless, Defendant.

No. 13999.

Court of Appeals of Idaho.

June 8, 1982.

Lowell N. Hawkes, Pocatello, for plaintiff-appellant.

Kenneth E. Lyon, Jr., Pocatello, for defendant-respondent.

WALTERS, Chief Judge.

Harriett McLaughlin appeals a judgment denying punitive damages, compensatory damages for alleged trespass to real property and injury to her health, and a request for revocation of a real estate option contract. We *affirm* the judgment.

On appeal we have not been furnished with a complete transcript of the testimony at trial. Appellant has only furnished the clerk's record and the reporter's transcript of the testimony of defendant Logan Dean Robinson, called as an adverse witness by Mrs. McLaughlin. From this record we chronicle the following account of this dispute.

Harriett McLaughlin lived near her brother, Ole Hansen, on his property in Bannock County. When Hansen died in 1973, Mrs. McLaughlin, who was then 76 years old and widowed, succeeded to the ownership of Hansen's property and assumed responsibility for his debts. She met Logan Robinson on the day of Hansen's funeral when Robinson, who was a neighbor and friend of the decedent, dropped by to express condolences for her loss. Mrs. McLaughlin told Robinson she was quite concerned about the debts left by Hansen. Robinson indicated a possible interest in purchasing the Hansen property, or part of it. He left his name and phone number with her.

Mrs. McLaughlin later decided to sell part of the property, contacted Robinson, and they negotiated a transaction. During the negotiations, Mrs. McLaughlin asked Robinson if he would recommend an attorney who could assist in the administration of Hansen's estate. Robinson recommended attorney Wayne Loveless, who recently had probated Robinson's father's estate, apparently to Robinson's satisfaction. Loveless was engaged and eventually completed administration of the estate, with Mrs. McLaughlin acting as personal representative.

During the administration of the estate, Mrs. McLaughlin and Robinson reached an agreement regarding the real property. Mrs. McLaughlin offered to divide the property, conveying the southern portion to Robinson, and giving him an option to purchase the northern parcel, subject to a retained life estate in Mrs. McLaughlin. Robinson accepted. As consideration in the transaction Robinson gave Mrs. McLaughlin a sum of money and paid certain debts left by Ole Hansen; Mrs. McLaughlin gave Robinson a ten-year option to purchase the northern parcel.

Attorney Loveless drafted the necessary legal instruments for the real estate transaction. For the purpose of preparing the property description in the sales contract,

the deed of conveyance and the option agreement, Mrs. McLaughlin, Robinson, and Loveless met at the McLaughlin home, where she pointed out where the boundary line should run. Mrs. McLaughlin and Robinson agreed to place it approximately sixty feet south of the McLaughlin house. Loveless worked out the description mathematically in his office, and the sale was completed. Apparently the attorney never returned to the property to double check his computations. Had he done so, he would have detected something was amiss.

Sometime in 1978 or 1979, Mrs. McLaughlin's health began to fail. She asked a niece in Soda Springs, Idaho, to move to Pocatello to live near her. The niece agreed and made arrangements to sell her home in Soda Springs and to move a mobile home onto the McLaughlin property. The decision to place the mobile home in a location just south of Mrs. McLaughlin's house indirectly led to this lawsuit.

Apparently the niece handled the mobile home emplacement. At first Robinson had no objection to Mrs. McLaughlin "building on to her house" next to his property. By letter he so notified the City of Pocatello, from whom a building permit was required to place the mobile home on the McLaughlin property. Subsequent events changed his attitude. Mrs. McLaughlin's house previously had shared a septic tank with a small rental house on the southern parcel transferred to Robinson. However, when a permit for the mobile home was sought, the City required both the McLaughlin house and the mobile home to be hooked up to city water and sewer. Mrs. McLaughlin asked Robinson if he wanted to join in the hookup. He declined. Unfortunately, when the niece had the McLaughlin house disconnected from the septic tank, the plumbing for Robinson's rental house was also torn up and his tenants were forced to evacuate. Robinson became angry and a quarrel with Mrs. McLaughlin ensued, leading to heated discussions.

In the meantime, other things were happening. According to the documentary evidence in the record, in the summer of 1978, Mrs. McLaughlin had requested attorney Loveless to "remove the option" granted to Robinson, as she did "not want Mr. Robinson to have any part" of her property. According to the trial judge's findings, in 1978 or 1979 it was discovered that the property descriptions Loveless had drafted in 1973 differed from what the parties had agreed to. Mrs. McLaughlin's house was actually within the legal description of the property conveyed to Robinson in the sale documents. The mobile home was also located on the property deeded to Robinson. Robinson tried to place a "No Trespassing" sign on the south side of the McLaughlin house, but the sign didn't remain up for long. Mrs. McLaughlin saw the sign being erected, came out of her house, knocked the sign down, and threw a hammer at Robinson and his helper. They quickly retreated. The sign stayed down. To further complicate matters, Mrs. McLaughlin became quite ill during the time of this dispute and had to be hospitalized.

Mrs. McLaughlin hired another attorney to straighten out the situation. Inquiry was made of Robinson in June 1979 whether he would deed part of the property back to Mrs. McLaughlin. He immediately responded in the negative. Robinson then notified the City of Pocatello that he objected to placing the mobile home near the McLaughlin house, contending that the mobile home was situated upon his property. This objection was voiced almost to the day that the complaint was filed commencing this litigation.

In mid-July suit was filed against Robinson and Loveless. As part of her prayer, Mrs. McLaughlin asked the court to revoke the option to purchase held by Robinson. The suit also asked that the description in the real estate contract and deed of conveyance be corrected to conform with the parties' intentions at the time of the agreement. She further prayed for punitive damages against Robinson; for damages for injury to her health caused by the quarreling; for damages for trespass; and for attorney's fees and court costs.

A court trial was held. The trial court found the option contract to be valid and refused to revoke it. The trial judge denied recovery of punitive damages. No damages were awarded to Mrs. McLaughlin for her claims of trespass or injury to her health. The court found Loveless negligent in drafting the property description and required him to pay attorney fees and costs to Mrs. McLaughlin. The description in the real estate contract, deed of trust, and option contract was corrected to comply with the original agreement. Robinson was ordered to reimburse Mrs. McLaughlin for one-half the cost she incurred after the suit was filed, in hiring a surveyor to determine the proper boundary line.

The first issue we address is whether the trial court erred in refusing to award punitive damages. Mrs. McLaughlin contends that Robinson used devious, evasive, and deceitful means to uphold a legal description he knew was in error, in order to take away the property of a poor, elderly widow. She relies on *Cohen v. Merrill*, 95 Idaho 99, 503 P.2d 299 (1972) for authority that punitive damages are appropriate where a buyer under a deed consciously takes advantage of a seller because of an erroneous legal description.

*Cohen* involved a dispute similar to the instant matter, concerning whether more land had been sold than the seller intended, due to an error in the legal descriptions contained in the sale documents. The seller brought suit to correct the deed to the property sold. Summary judgment was awarded by the trial court to the seller. The buyers appealed. On appeal the case was remanded to the trial court for further proceedings. In respect to a claim by the seller for exemplary damages, the Idaho Supreme Court said:

Regarding the cross appeal of seller Max J. Cohen alleging a right to exemplary damages against both buyers and realtor Martin, if upon rehearing as above ordered, the trial court finds that buyers or realtor Martin knew of seller's mistake and consciously took advantage of him, then the court shall determine the issue of exemplary damages under the standard set out in *Cox v. Stolworthy*, 94 Idaho 683, 496 P.2d 682 (1972) and *Jolley v. Puregro*, 94 Idaho 702, 496 P.2d 939 (1972).

95 Idaho at 104, 503 P.2d at 304.

We recognize *Cohen* as an example of a type of case—similar to the present matter—where, if justified by the evidence, punitive damages may be appropriate. However, the right to such an award must be established by the evidence.

The *Cox* and *Jolley* decisions cited in the *Cohen* opinion outline the types of cases in which punitive damages may be appropriate. More recently our Supreme Court articulated a common standard for evaluating whether a defendant's conduct justifies the award of punitive damages in a particular case. *See Hatfield v. Max Rouse & Sons Northwest*, 100 Idaho 840, 606 P.2d 944 (1980) and *Linscott v. Rainier Nat. Life Ins. Co.*, 100 Idaho 854, 606 P.2d 958 (1980). The court noted in *Linscott* that punitive damages should be awarded only in the face of conduct on the part of a defendant which society considers so reprehensible as to require an extraordinary remedy. *Id.* at 857, 606 P.2d at 961. The court then held that punitive damages may be awarded by the trier of fact "so long as the evidence shows that there has been an injury to the plaintiff from an act which is an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or a disregard for its likely consequences (in the words of prior cases, with fraud, malice or oppression). . . ." *Id.* 100 Idaho at 858, 606 P.2d at 962. We review the instant matter with these guidelines in mind.

On appeal Mrs. McLaughlin argues that, until the time of trial, Robinson was totally unwilling to correct the deed given to him so that the McLaughlin home would not be included within the legal description of the land deeded to him. It is this conduct, occurring prior to the filing of suit, upon which the claim for punitive damages is predicated.

Documentary evidence submitted at trial shows that Mrs. McLaughlin's new attorney, Mr. Coulter, wrote to Robinson approximately one month before the suit was filed. In that letter, the attorney inquired whether Robinson would execute a quit claim deed to the land lying between the agreed boundary and the boundary appearing in the deed from Mrs. McLaughlin to Robinson. Robinson immediately responded through his attorney, declining to transfer any property back to Mrs. McLaughlin. At trial Robinson testified as follows:

Q. At any time, have you been asked by anyone to have the deed, that is, the original deed which was executed by Harriet to you, modified to reflect what you understood the line to be and just stop there? That is not invalidated, the option or anything of that nature?

A. When I got the letter from Mr. Coulter, what that was a reflection of is, that he wanted me to deed a Quitclaim Deed. It wasn't just merely correcting the boundary line. It was, as a matter of fact, a Quit-claim Deed in the property from where the line that—they were saying now, that the line was to our intended line. And that was, you know, just a Quitclaim Deed. And I says, "Absolutely not. I'm—I refuse to deed a Quitclaim. That ground, it's all involved in the deed—in the option." But that was Mr. Coulter's—that was the way I understood his recent letter.

Q. At any time, did you have an opportunity just to modify the deed and leaving everything else the way it was?

A. No, I never had an opportunity.

Other evidence must have shed some light on this issue, because the court found:

27. Along about the time of [the niece's] decision to move onto the premises to be near and take care of [Mrs. McLaughlin], and thereafter, [Mrs. McLaughlin] came up with the idea that she should compensate [the niece] at some future time for [the niece's] troubles. However, [Mrs. McLaughlin] had no resources other than the land, and [Mrs. McLaughlin] was faced with [the option agreement]. It became [Mrs. McLaughlin's] idea that she wanted to reimburse [the niece] with land, not the cash the land might produce if the option were exercised according to its terms. *So, [Mrs. McLaughlin] obtained the services of a lawyer not only to correct the descriptions, but to "break the option."* (Emphasis supplied.)

Although, on appeal, Mrs. McLaughlin argues other facts that may bear on justification for an award of punitive damages in this case, we have searched the record provided on appeal and find that the argued facts are not present. The evidence before us, coupled with the court's finding that Mrs. McLaughlin was desirous of "breaking" the option, leads to the conclusion that Robinson was attempting to protect the rights he had acquired through the deed and option.

In this case, the trial court sitting as the trier of fact, viewed the evidence before it and specifically found Robinson's conduct did not rise to the level which would allow an award of punitive damages. The record before us supports this determination. We therefore sustain the trial court's determination that punitive damages should not be recovered by Mrs. McLaughlin.

■ We next address Mrs. McLaughlin's contention that the trial court improperly denied in total her damage claim for injury to health. She and her niece purportedly testified (it is not in the record before us) that during the course of the boundary dispute, Mrs. McLaughlin was sickened and hospitalized due to the dispute over the property and this lawsuit. The trial court found nothing in the evidence to show the nature, extent or duration of her physical problems. The court found that no cause was ascribed to Mrs. McLaughlin's problems other than her "assertions that they were caused by the events above mentioned and the lawsuit." No recovery was granted. We find nothing in the transcript of Robinson's testimony, nor the documentary evidence, which would affirmatively show the trial court erred. The trial court's findings imply a lack of proof as to the causation of

the illness. On appeal, the appellant carries the burden of showing that the trial court erred. Error will not be presumed on appeal, but must be affirmatively shown on the record. *Dawson v. Mead*, 98 Idaho 1, 557 P.2d 595 (1976). We therefore uphold the denial of the damages claimed for injury to Mrs. McLaughlin's health.

In regard to the claim for damages for trespass, Mrs. McLaughlin alleges the court should have awarded her either the general damages claimed in her pleadings, or, at least, nominal damages. In an action for trespass to real property an owner is entitled to recover the amount necessary to repair any injury caused by a trespass, i.e., the amount necessary to place the land in the same condition it was in immediately prior to the injury. *Raide v. Dollar*, 34 Idaho 682, 203 P. 469 (1921). However, a plaintiff need not prove actual harm in order to recover nominal damages in cases of trespass to land because nominal damages are presumed to flow naturally from a wrongful entry upon land. *Aztec Limited, Inc. v. Creekside Investment Company*, 100 Idaho 566, 570, 602 P.2d 64, 68 (1979).

It is axiomatic, however, that both forms of recovery require proof of a trespass. The evidence in the record before us is unclear whether a trespass actually occurred. Apparently the entire evidence submitted at trial in this case likewise was unclear. In its findings of fact, the trial court found against the trespass claim, holding that the

> [p]roof of trespass is confined to the "no trespassing" sign incident; the proof of location of trespass in relation to the dividing-line-intent of the parties is not clear—the witnesses placed the sign in various spots; plaintiff [Mrs. McLaughlin] eliminated the trespass by her own abatement thereof....

Robinson testified that he placed the "No Trespassing" sign upon what he and Mrs. McLaughlin "had originally intended to be the property line;" that the sign was not up "for over five minutes" before Mrs. McLaughlin knocked it down, and "it was never put back up." At that point in time the deed to Robinson apparently included, albeit erroneously, the ground on which the "No Trespassing" sign was placed. Having no other evidence before us on this issue, we conclude that the trial court properly denied recovery of any claim for the alleged trespass.

Mrs. McLaughlin also alleges it was error to refuse to require Robinson to pay her attorney's fees because he knew the property description was erroneous, and he defended the action frivolously, unreasonably, and without foundation. Robinson, however, was unwilling to accept Mrs. McLaughlin's request that he give up his option to purchase her property. He was legally entitled to refuse this request and he prevailed on this point in the lawsuit. Award of attorney fees pursuant to I.C. § 12–121 or I.R.C.P. 54(e)(1) can be made only when the trial court finds that an action is pursued or defended frivolously, unreasonably or without foundation. We are not persuaded that the trial court erred in determining that the requirements of Rule 54(e)(1) had not been satisfied.

Both parties on appeal request an award of attorney fees. We find that the appeal was neither brought, pursued or defended frivolously, unreasonably, or without foundation. No attorney fees will be awarded. *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 591 P.2d 1078 (1979).

The judgment of the trial court is affirmed. Costs to respondent.

BURNETT and SWANSTROM, JJ., concur.