862 P.2d 321

**Leslie Kent BUMGARNER,
Plaintiff–Respondent,**

v.

**Gary D. BUMGARNER, Defendant–
Appellant.**

**No. 19757.**

Court of Appeals of Idaho.

Oct. 4, 1993.

632

Cooke, Lamanna, Smith & Cogswell, Sandpoint, for defendant-appellant. Dar Cogswell argued.

Michael B. Hague, Coeur d'Alene, argued for plaintiff-respondent.

WALTERS, Chief Judge.

This lawsuit stems from a property dispute between two brothers, Leslie Kent Bumgarner ("Kent") and Gary Bumgarner ("Gary"). Gary appeals from the judgment, entered against him, quieting title to real property and awarding compensatory, statutory and punitive damages for trespass. He also appeals from the district court's award of attorney fees. For the reasons explained below, we affirm.

### Facts

The circumstances giving rise to this case involve the division and conveyance of approximately three and one-half acres of real property fronting on Lake Coeur d'Alene, in Kootenai County, Idaho. The property, known as the "Cottonwood Bay Property," originally was part of a larger parcel owned by P.P. and Lucile Johnson, who, in 1926, deeded it to A.M. Pratt using the following description:

> The north three and one-half acres of the east half of Lot (4) four, Section (4) four, Township Forty-seven (47) North, Range (4) West of the Boise Meridian, *less a strip of land twenty-five feet wide on south side of said described land which is reserved for the purpose of giving passage or right of way for a roadway.* (Emphasis added.)

By subsequent deeds of conveyance, each containing the identical reservation language, Leslie C. Bumgarner and his wife, Laura Bumgarner, acquired the Cottonwood Bay Property in 1947. Mr. Bumgarner died in 1963, leaving his interest in the property to Laura. In 1970, Laura decided to divide the property equally among her three children, Gary, Kent, and Jean. Laura had deeds prepared conveying the north one-third of the Cottonwood Bay lot to Jean, the south one-third to Gary, and the middle one-third to Kent. Each of the deeds used identical language to describe the lot being divided. Executing these deeds, Laura thus conveyed to Jean:

> The North one-third of the following described property as measured along the west line:
>
> The North three and one-half acres of the East half of Lot (4) four, Section (4) four, Township (47) Forty-seven North, Range (4) West of the Boise Meridian, less a strip of land twenty-five feet wide on the south side of said described land which is reserved for the purpose of giving passage or right of way for a roadway.

She conveyed to Gary:

> The South one-third of the following described property as measured along the West line:
>
> The North three and one-half acres of the East half of Lot (4) four, Section (4) four, Township (47) Forty-seven North, Range (4) West of the Boise Meridian,

less a strip of land twenty-five feet wide on the south side of said described land which is reserved for the purpose of giving passage or right of way for a roadway.

And she conveyed to Kent:

[The] South half of the North two-thirds of the following described property as measured along the West line:

The North three and one-half acres of the East half of Lot (4) four, Section (4) four, Township (47) Forty-seven North, Range (4) West of the Boise Meridian, less a strip of land twenty-five feet wide on the south side of said described land which is reserved for the purpose of giving passage or right of way for a roadway.

In 1973, a neighbor questioned the boundaries of the Cottonwood Bay Property and intimated that he might claim a right to use the twenty-five foot strip for lake access. Troubled by this prospect, Jean located P.P. Johnson, the original grantor of the Cottonwood Bay Property. Through Jean's efforts, Johnson, in 1975, gratuitously quitclaimed his interest in the twenty-five foot strip to Jean, Kent and Gary. In 1981, Jean and Kent quitclaimed their interest in the strip to Gary, who held title to the south one-third of the Cottonwood Bay Property.

Laura died in 1981. In that same year, Gary constructed a house on his lot. In the process, he enlarged the already existing turn-around roadway in the middle of Kent's lot. When Kent, who was residing outside the state at the time, noticed the change a year later, he confronted Gary and accused him of "raping" his property. However, reasoning that the damage had already been done, Kent permitted Gary to use the turn-around, but told him not to do anything more to his lot. In June of 1986, Kent wrote to Gary and Jean specifically telling them "not to change my lot in any way; no roads, no tree or firewood removed, no beach cleaning, in short, no activity of any kind." That September, Gary sought permission from Kent to build a new road across Kent's property in order to access the beach. Kent denied permission and again told Gary that he wanted his lot left alone.

In 1987, notwithstanding Kent's requests to leave his lot alone, Gary constructed a roadway across the west end of Kent's lot ("the West Road"). In the process, he destroyed approximately thirty-seven fir trees and several "birch clumps." Gary also constructed a new road to the beach, ("the Beach Access Road"), running in an east-west direction, and in doing so removed two or three pine trees. He also erected a hitching post on Kent's lot, near the shore. The Beach Access Road and the hitching post are located on the south portion of Kent's lot, which, throughout this litigation, both parties have claimed to own.

### Procedural Background

In May, 1988, Kent filed this action against Gary, seeking quiet title to a seventy-two foot lot which he maintains he received as a result of Laura's division and conveyance of all of the Cottonwood Bay Property, *including* the twenty-five foot strip, among her three children. He also alleged that Gary's construction of the two roadways across his lot constituted trespasses for which he was entitled to compensatory, statutory and punitive damages. Additionally, he sought to recover damages for the negligent infliction of emotional distress.

Gary denied all of Kent's claims and filed a counterclaim seeking to quiet title in himself to an *eighty-nine* foot wide parcel in the Cottonwood Bay Property. He alleged that under the deeds of conveyance, Laura had divided the Cottonwood Bay Property, *excluding* the twenty-five foot strip, into three *sixty-four* foot wide lots. He asserted that he later acquired title to the twenty-five foot strip through the quitclaim deeds of P.P. Johnson, Jean and Kent, given to him in conjunction with a proposed, but unconsummated, plan among his siblings to redivide the entire Cottonwood Bay Property. Based upon this factual scenario, he claimed that the Beach Access Road was located on the northern portion of his own lot, and thus he was not liable to Kent

for trespass in its construction. Gary also denied Kent's claims for trespass arising from the construction the West Road, which indisputably lies across Kent's lot. He further asserted prescriptive rights to use and maintain the septic tank effluent line he had installed across Kent's property, and to use the turn-around roadway in the middle of Kent's lot. The parties' respective theories of deed construction are illustrated by the following sketch.

Kent's Theory of Deed Construction

Gary's Theory of Deed Construction

Both parties moved for partial summary judgment on the quiet title issue. Gary asserted that Laura never meant to include the strip in the conveyances to her children, and that she intended to divide the property into three sixty-four foot wide lots. To support his assertion, he argued that the grantor of the original deed in 1926 had retained a fee interest in the twenty-five foot strip, not merely an easement. Therefore, he argued, Laura had no interest in it to convey. Kent's position, on the other hand, was that the reservation language was intended to reserve an easement or a right-of-way over the twenty-five foot strip, and that in dividing and conveying the Cottonwood Bay property to her children, Laura had *included* her fee interest in the strip.[1]

---

1. A survey requested by Leslie C. Bumgarner in 1955 described the boundaries as inclusive of

After considering conflicting evidence on the matter, the district court denied the motions, holding that the deed language reserving the twenty-five foot strip was ambiguous and that extrinsic evidence therefore would be admissible to interpret Laura's intent. Following an eight-day trial before the court without a jury, the district judge found that Laura had intended to convey, and did convey, to Jean, Kent and Gary all of the Cottonwood Bay Property, *including* the twenty-five foot strip, so that each of the children received a parcel approximately seventy-two feet wide. The court quieted title in Kent and held that the Beach Access Road and the hitching post were located on Kent's property. Based upon these determinations, the court awarded Kent $2,074.60 as the costs to repair and restore the damage caused by the Beach Access Road, plus $201 for the pine trees removed in the process, and $26 to remove the hitching post. The court further concluded that because Gary had believed he owned that portion of the lot, his actions did not rise to the level which would justify imposing exemplary damages.

However, Gary had made no claim of ownership to the west end of Kent's lot over which he had constructed the West Road. Based upon Gary's trespass to that portion of Kent's lot, the court awarded Kent $816.50 to repair and restore the damage caused by the West Road, and $6,190.44 for the value of trees Gary had removed in the process. Pursuant to I.C. § 6–202, the court trebled the damages for the trees to $18,571.37. Additionally, the court awarded $15,000 in punitive damages for the construction of the road, conduct which the district court found to be "malicious, outrageous and unreasonable." The court denied Kent's claim for negligent infliction of emotional distress. The court also denied all of Gary's disputed claims, except that it granted him a prescriptive right of easement for the use and maintenance of the septic tank effluent line installed across Kent's lot.

Finally, the court determined that Kent was the prevailing party in the lawsuit and awarded him $5,701.47 in costs. The court also found that because Kent had prevailed on part of his statutory claim for treble damages, he was entitled to attorney fees under I.C. § 6–202. The court awarded $18,532.75 to him in attorney fees—the amount it determined to be attributable to the trespass claim upon which Kent had prevailed. The court entered a final judgment in favor of Kent in the amount of $36,689.87.

Gary appeals, challenging the court's decision to quiet title to the disputed property in Kent; the court's awards of compensatory, statutory and punitive damages; and the court's award of attorney fees.

## Issues on Appeal

1. Did the district court erroneously conclude that the deeds by which Laura divided and conveyed the Cottonwood Bay Property to her three children include the twenty-five foot strip?

2. Did the court erroneously award Kent damages for losses based on negligence, a theory of recovery which was never asserted in the pleadings?

3. Did the court err by awarding damages for temporary injury to property measured as the costs of repairing and restoring the land?

4. Does the record lack sufficient evidence to support the court's award of damages for the removal of the trees from the west end of Kent's property?

5. Did the court err in its award of punitive damages? Specifically:

(a) Does the record lack substantial evidence to support the award?

(b) Did the court base its award on causes of action barred by the statute of limitation? and

---

the twenty-five foot strip. In 1981, Gary, Kent and Jean jointly commissioned another survey of the boundaries, which again showed the strip to be included in the property they owned. A third survey, commissioned by Gary in December, 1981—after the commencement of this lawsuit—excluded the strip from its description of the property boundaries.

(c) Was the award duplicative of the award of treble damages?

6. Did the court err by admitting hearsay testimony?

7. Did the court err denying Gary's claim to a right by prescriptive easement?.

8. Did the trial court erroneously award Kent $18,532.75 in attorney fees?

## Standards of Review

■■■ In an appeal such as this, we are presented with mixed questions of law and fact. We will defer to factual findings made by the district court, if they are not clearly erroneous. I.R.C.P. 52(a). We do not weigh the evidence, nor do we substitute our view of the facts for that of the trial judge. *Alumet v. Bear Lake Grazing Co.*, 119 Idaho 946, 949, 812 P.2d 253, 256 (1991). We merely determine whether the findings are supported by substantial, even if conflicting, evidence in the record. If so supported, such findings will not be deemed clearly erroneous, and thus will not be disturbed on appeal. *Sun Valley Shamrock Resources, Inc. v. Travelers Leasing Corp.*, 118 Idaho 116, 118, 794 P.2d 1389, 1391 (1990). This same standard of deference on appeal applies even where the evidence supporting the disputed finding is entirely documentary. *See Deer Creek, Inc. v. Clarendon Hot Springs Ranch, Inc.*, 107 Idaho 286, 290–91, 688 P.2d 1191, 1194–95 (Ct.App.1984). However, we will exercise free review over the lower court's conclusions of law to determine whether the court correctly stated the applicable law, and whether the legal conclusions are sustained by the facts found. *Burns v. Alderman*, 122 Idaho 749, 752–53, 838 P.2d 878, 881–82 (Ct.App.1992); *Issak v. Idaho First Nat. Bank*, 119 Idaho 988, 989, 812 P.2d 295, 296 (Ct.App.1990), *aff'd*, 119 Idaho 907, 811 P.2d 832 (1991).

## 1. The Trial Court Did Not Erroneously Construe the Deeds.

We turn first to the district court's conclusion that Laura conveyed to each of her children a seventy-two foot wide lot, and not a sixty-four foot wide lot as urged by Gary. This conclusion is based on the court's construction of the phrase *"less* a strip of land twenty-five feet wide on south side of said described land *which is reserved for the purpose of giving passage or right of way* for a roadway." (Emphasis added.)

■■■ In construing a deed of conveyance, the trial court's primary function is to seek and give effect to the real intention of the parties. *Gardner v. Fliegel*, 92 Idaho 767, 770, 450 P.2d 990, 993 (1969); *Hogan v. Blakney*, 73 Idaho 274, 279, 251 P.2d 209, 213 (1952); *Phillips Industries, Inc. v. Firkins*, 121 Idaho 693, 696–97, 827 P.2d 706, 709–10 (Ct.App.1992). Thus, if the language of the deed is unambiguous, the parties' intent will be ascertained from the deed itself as a matter of law, without resort to extrinsic evidence. *Latham v. Garner*, 105 Idaho 854, 857, 673 P.2d 1048, 1051 (1983); *Gardner*, 92 Idaho at 770–71, 450 P.2d at 993–94. If, however, the deed language is found to be ambiguous, the interpretation of the grantor's intent becomes a question of fact to be determined from the instrument itself and from all the surrounding facts and circumstances. *Latham*, 105 Idaho at 857, 673 P.2d at 1051; *Gardner*, 92 Idaho at 771, 450 P.2d at 994.

■■■ In the instant case, the district court concluded that the phrase, "less a strip of land twenty-five feet wide on south side of said described land which is reserved for the purpose of giving passage or right of way for a roadway," as contained in the deeds from Laura, was ambiguous: the phrase could mean either that the grantor intended to retain a fee interest in the strip, or that she intended merely to reserve a right of easement. In view of our Supreme Court's decision in *Gardner*, 92 Idaho at 771, 450 P.2d at 994, we uphold this threshold determination.[2] Our task,

---

2. In *Gardner*, the Court held that the phrase "Less a strip of land 30 feet wide off the East side for roadway" was ambiguous: "On the one hand it expresses the intent to retain the fee to the strip in the grantor. On the other hand it expresses the intent to create an easement for

then, is to determine whether the district court erred in finding, as a matter of fact, that Laura intended to include the strip in her conveyances.

█ We hold that the district court's finding that the descriptive phrase was intended to reserve an easement, only, is amply supported by the record. Although the reservation clause in the deeds was subject to possibly conflicting interpretations, the language nonetheless serves as strong evidence that the original grantors, the Johnsons, intended to reserve an easement; there was no need to describe the strip as being "reserved" for "a right of way" if they had intended to retain fee title. *Accord Cusic v. Givens*, 70 Idaho 229, 231–32, 215 P.2d 297, 299–300 (1950) (holding that a deed containing language "Except a strip of land sixteen feet wide reserved for right-of-way for road purposes" expresses an intent to convey the fee and reserve only an easement), *overruled on other grounds, Cardenas v. Kurpjuweit*, 116 Idaho 739, 779 P.2d 414 (1989). Moreover, the evidence shows that after the Johnsons had conveyed the property, the county assessor's office no longer treated them as owning any fee interest in that lot. All of the subsequent grantees, including Leslie C. and Laura Bumgarner, were assessed taxes on the full property, including the strip in question, during their respective ownerships of the Cottonwood Bay Property. It was only *after* the commencement of this lawsuit that the assessor's office began to treat the twenty-five foot strip as a separate parcel. Based upon this record, we uphold the district court's finding that the original deed of conveyance was intended to include the strip in question, and that the reservation language was intended to reserve only a right-of-way over it for a roadway.

█ In light of the construction placed on the language in the original deed of conveyance, the later deeds, which used identical language to divide the property among Laura's children, should likewise be construed to include the twenty-five foot strip. *See Gardner*, 92 Idaho at 770, 450 P.2d at 993. Notwithstanding the construction placed upon the prior deeds, Gary argues that contrary evidence demonstrates that Laura intended to *exclude* the strip from her conveyances to her children. In particular, Gary notes that the attorney who drafted the deeds at Laura's instruction testified that Laura did not intend to include the strip with the conveyances. Yet, a review of the trial transcript reveals that the lawyer's testimony was but his opinion, based upon his own interpretation of the reservation language contained in the original deed and his subjective belief that Laura would not have wished to give Gary, her favored son, a lot encumbered by an easement. Nowhere did this witness identify any statement from Laura to indicate either that she believed she did not own the strip or that she owned it but wished to retain it for herself. To the contrary, the documentary evidence admitted at trial amply demonstrates that Laura understood that her ownership of the Cottonwood Bay Property *included* the twenty-five foot strip, and that she intended to convey to her children all of her interest in that property, *including* the strip in question. For example, in 1970, she wrote in her personal records "Gave Gary ⅓ lake prop. 72'." She made similar notations concerning the lots given Jean and Kent, each consistent with an understanding that she owned the twenty-five foot strip and intended to include it in her conveyances to her children, and *inconsistent* with Gary's claim that she had intended to convey three, sixty-four foot lots.

Gary further complains that by its finding that Laura intended to include the twenty-five foot strip in her conveyances, the district court improperly rejected the testimony offered by other witnesses. This argument is misplaced. As noted .

roadway over the strip in favor of the grantor. Such expressions of intent are inconsistent." 92 Idaho at 770–71, 450 P.2d at 993–94. *Compare Cusic v. Givens*, 70 Idaho 229, 231–32, 215 P.2d 297, 299–300 (1950) (holding that a deed containing language "Except a strip of land sixteen feet wide reserved for right-of-way for road purposes" expresses an intent to convey the fee and reserve only an easement).

above, our role in reviewing contested findings of fact does not permit us to reweigh conflicting evidence. We are limited to determining whether the record contains substantial evidence to support the challenged findings. The record before us in this case is replete with such evidence, and the court's findings will not be disturbed. The judgment quieting title in Kent to a lot seventy-two feet wide, which is based upon those challenged findings, therefore is affirmed.

## 2. The Court Did Not Grant Recovery Under a Negligence Theory.

Gary also assigns error to the district court's findings that he had "negligently" damaged Kent's lot by constructing the Beach Access Road and the hitching post, and by removing two trees, all which occurred on the portion of the property which both parties claimed to own. Gary maintains that these findings, and the damages awarded on the basis of such findings, must be overturned because the theory of "negligent damage to property" was never pled or tried in this case. As explained below, this argument mischaracterizes the district judge's findings and conclusions.

▆▆▆ Although not stated in the statute, I.C. § 6–202 applies only where the alleged trespass is shown to have been wilful and intentional. *Earl v. Fordice,* 84 Idaho 542, 545, 374 P.2d 713, 714 (1962); *Menasha Woodenware Co. v. Spokane Int'l Railway Co.,* 19 Idaho 586, 594, 115 P. 22, 24 (1911). Thus, where the defendant wrongfully enters upon the plaintiff's property or cuts his trees, but the defendant's trespass is neither wilful or intentional, the plaintiff is entitled to recover his actual damages at common law, but he is not entitled to have those damages trebled. *Menasha Woodenware Co.,* 19 Idaho at 594, 115 P. at 24; *see also Mock v. Potlatch Corp.,* 786 F.Supp. 1545, 1547 (D.Idaho 1992).

▆▆▆ It is clear from the district court's memorandum opinion that the court's findings of negligence were directed, in part, to its denial of Kent's claim for treble damages for trespasses occurring on the disputed southeast portion of Kent's lot. With respect to those trespasses, the court concluded that, because Gary had believed he owned the portion of land in question, his invasion of Kent's property rights was not wilful and intentional, but merely negligent. Consequently, the court declined to award treble damages for the value of the pine trees removed. Similarly, the court refrained from granting punitive damages for Gary's conduct, concluding that "Such negligence does not rise to a level which would justify the awarding of punitive damages," and thus awarded Kent only the costs of repairing and restoring the southeast portion of his land. A reading of the memorandum opinion further reveals that the court's additional reference to Gary's negligence was in its decision to deny Kent's claim for negligent infliction of emotional distress. Consequently, we reject Gary's assertion that the court's finding of negligence served as the basis of an award against him.

## 3. The Court Employed the Correct Measure of Damages for Injury to Property.

▆▆▆ Gary next asserts that the trial court employed an improper measure in assessing damages resulting from the trespasses to Kent's land. Where, as here, the injury to the land is temporary and not permanent, the owner is entitled to recover the amount necessary to repair the injury and put the land in the condition it was at the time immediately preceding the injury. *Smith v. Big Lost River Irr. Dist.,* 83 Idaho 374, 385, 364 P.2d 146, 157 (1961), *cited in Bradford v. Simpson,* 97 Idaho 188, 192 n. 1, 541 P.2d 612, 616 n. 1 (1975); *Raide v. Dollar,* 34 Idaho 682, 683, 203 P. 469, 471 (1921); *McLaughlin v. Robinson,* 103 Idaho 211, 216, 646 P.2d 453, 458 (Ct. App.1982). Applying this measure, the district court awarded Kent $816.50 to repair and restore the injury caused by the construction of the West Road, $2,074.60 as the costs to repair and restore the damage caused by the Beach Access Road, and $26 as the cost of removing the hitching post.

Gary contends that the court erred by allowing Kent to recover the costs of repairing and restoring his land absent any evidence that the property's market value had diminished. Gary relies on *Alesko v. Union Pacific R.R. Co.*, 62 Idaho 235, 241, 109 P.2d 874, 877 (1941), wherein our Supreme Court stated that, "if the cost of restoration exceeds the value of the premises in their original condition, or the diminution in market value the latter are the limits of recovery." This limitation has not appeared in the Supreme Court's more recent statements concerning the measure of damages for temporary injury to real property. *See, e.g., Bradford,* 97 Idaho at 192 n. 1, 541 P.2d at 616 n. 1; *Smith,* 83 Idaho at 385, 364 P.2d at 157; *see also McLaughlin,* 103 Idaho at 216, 646 P.2d at 458.[3] However, assuming that diminution in market value does establish an outer limit of recovery for temporary injury to land, we conclude that the record contains substantial, competent evidence to show that the damages awarded by the court did not exceed this limit.

As owner of the property at issue, Kent was competent to testify to its value. *Smith,* 83 Idaho at 386, 364 P.2d at 153. He testified that Gary's bulldozing activities had diminished the property's market value by the cost of repairing and restoring the land. Moreover, there was no competent evidence to show that the value of the lot had *not* decreased as Kent had testified. Contrary to Gary's assertion, the fact that the value of the lake-front lot has continued to appreciate over the years does not negate Kent's claim for damages. Finding no error in the court's measure of damages, we uphold the court's decision to award Kent the costs of repairing and restoring his property.

## 4. Sufficient Evidence Supported the Damages Awarded for Removal of the Trees.

Gary also asserts that the trial court's award of damages for the trees taken from the west end of Kent's lot was not adequately supported by the evidence, and therefore should be vacated. In an action for timber trespass, the measure of actual damages is based upon the amount of the trees taken and the market value of the trees in that area at the time of the taking. I.C. § 6–202; *Mercer v. Shearer,* 84 Idaho 536, 540–41, 374 P.2d 716, 719 (1962). In this case, the court found that Gary had removed from the west end of Kent's property ten two-foot tall evergreen trees, valued at $240; ten four-foot tall evergreen trees, valued at $480; and seventeen six-foot tall evergreen trees, valued at $1,224. The court also found that Gary had removed three "birch clumps," valued at $4,246.44.

Gary complains that the testimony as to the number of trees removed was sometimes so general, and sometimes so conflicting, that it was insufficient to adequately establish the amount of Kent's damages. We disagree. To establish his damages, Kent was required to show, with reasonable certainty, the number of the trees taken. "Reasonable certainty" does not require mathematical exactitude, but only that the damages be taken out of the realm of speculation. *Haener v. Ada County Highway Dist.,* 108 Idaho 170, 174, 697 P.2d 1184, 1188 (1985); *Lewiston Pre-Mix Concrete, Inc., v. Rohde,* 110 Idaho 640, 648, 718 P.2d 551, 559 (Ct.App.1985). The mere fact that it is difficult to arrive at exact amount of damages, where it is shown that damages resulted, does not mean that damages may not be awarded; it is for the trier-of-fact to fix the amount. *Smith v. Daniels,* 93 Idaho 716, 718, 471 P.2d 571, 573 (1970). In fixing that amount, it is for the trier of fact to determine the credibility of the witnesses, to resolve conflicts in the evidence, and to draw reasonable inferences therefrom. *Eliopulos v. Kondo Farms, Inc.,* 102 Idaho 915, 919, 643 P.2d 1085, 1089 (Ct.App.1982).

The testimony in the record shows that Gary caused thirty to fifty evergreen trees to be removed from Kent's lot; that

---

**3.** Of course, even if this limitation has been abandoned, recovery still would be subject to principles of economic waste and avoidable consequences.

approximately twelve of those trees were between six and eight feet high; that approximately twenty were between four and six feet tall; and that the rest were less than four feet tall. The testimony also showed that Gary also had up to four birch clumps removed from the west end of Kent's property. The district court's findings as to the number, size and species of the trees removed are consistent with this testimony and the other evidence submitted, and thus are supported by the evidence.

 Gary also takes issue with the court's valuation of the trees. Specifically, he argues that the court erred in valuing the trees based upon evidence of the cost of repurchasing them on the open market. He suggests that the court instead should have calculated the value of the trees based upon the price Kent would have received had he sold them "on site." It is well established, however, that the cost of replacement is evidence of an item's "market value." *See Spanbauer v. J.R. Simplot Co.*, 107 Idaho 42, 46, 685 P.2d 271, 275 (1984). Finding no error, we uphold the district court's decision concerning the valuation of trees removed.

### 5. Punitive Damages.

Gary also challenges the court's award of punitive damages. Specifically, he argues that (a) the trial court based the award on conduct for which recovery was time-barred; (b) the evidence was insufficient to support the award; and (c) the recovery of punitive damages duplicates the award of treble damages.

*a. The award was not based upon time-barred claims.*

 In its memorandum opinion, the district court found that in 1981, Gary had enlarged the turn-around road on the west end of Kent's lot and had also installed a septic tank effluent line across Kent's property. The court further found that when Kent observed the changes to his lot, he accused Gary of raping his land, and later specifically instructed Gary not to build any roads or to change his property in any

way. In 1986, when Gary sought permission to build the road across the west end of Kent's property, Kent refused and again told Gary that he wanted his lot left alone. Based upon these findings, the district court concluded:

> The construction of the road on the west end of Kent's lot was intentional, reckless and in knowing disregard of Kent's property rights. For Gary, an individual knowledgeable about tree farming and who had previously been accused by Kent of raping Kent's lot and told in no uncertain terms by Kent "to please not change my lot in any way; no roads, no tree or firewood removal, no beach cleaning, in short, no activity of any kind" to have constructed the west end road was the height of arrogance. Such conduct was malicious, outrageous and unreasonable. Kent is entitled to an award of punitive damages against Gary in the sum of $15,000.00. Such sum is necessary to both punish Gary for his past conduct and to deter such future conduct.

Gary notes that any claims for damages arising out his conduct in 1981, *i.e.,* the enlargement of the turn-around road and the installation of the effluent line across Kent's lot, are barred by the statute of limitation, *see* I.C. § 5–218(2), and were appropriately dismissed by the court prior to trial. Gary maintains, however, that because the statute of limitation precluded recovery for any damages incurred in 1981, the statute likewise precluded the court from considering the parties' conduct at that time when it evaluated Kent's damages claims arising in 1987.

It is clear that the court's reference to the 1981 incident goes to the fact that Gary was, from that point forward, put on notice that any further damage to Kent's lot would not be tolerated. Thus, regardless whether Kent could recover for the damages he sustained in 1981, the parties' conduct at that time was evidence bearing on Kent's claims for the trespass arising in 1987. In particular, the evidence was relevant to determining Gary's state of mind when he decided to bulldoze a road across

the west end of Kent's lot, an essential element of Kent's claims for punitive damages. *See Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 905, 665 P.2d 661, 669 (1983). At trial, Gary had protested that his intentions in constructing the West Road across Kent's land were innocent, if not magnanimous. However, evidence of Gary's previous conduct, including his actions in 1981, was relevant to refute this assertion and tended to show instead that his actions were malicious, outrageous, and done with knowing disregard of Kent's property rights. Hence, Gary's conduct in 1981 bore upon Kent's claims for punitive damages, and was properly considered by the trial court.

### b. Substantial evidence supports the award.

 Gary also contests the punitive damages award on the ground that such an award was not sufficiently supported by the facts. Our Supreme Court has stated:

> An award of punitive damages will be sustained on appeal only when it is shown that the defendant acted in a manner that was "an extreme deviation from reasonable standards of conduct, and that the act was performed by the defendant with an understanding of or disregard for its likely consequences." The justification for punitive damages must be that the defendant acted with an extremely harmful state of mind, whether that state be termed "malice, oppression, fraud or gross negligence"; malice, oppression, wantonness"; or simply "deliberate or willful." (Citations omitted).

*Manning v. Twin Falls Clinic & Hosp.*, 122 Idaho 47, 52, 830 P.2d 1185, 1190 (1992) *quoting Cheney*, 104 Idaho at 905, 665 P.2d at 669. When a trial court has made a punitive award, our standard of review is whether substantial evidence supports the determination that the requisite factual findings criteria have been satisfied. *R.T. Nahas Co. v. Hulet*, 114 Idaho 23, 29, 752 P.2d 625, 631 (Ct.App.1988).

 Gary complains that the court's finding that Gary's conduct was "malicious, outrageous and unreasonable" was erroneous in light of his testimony that his only motive for bulldozing Kent's property was "to further a family convenience for both Kent and Jean" and that he had misinterpreted Kent's previous admonitions to leave the property alone. The trial court weighed Gary's testimony against the body of evidence showing that Gary's actions were done in wilful disregard of Kent's property rights. The evidence, although conflicting, was sufficient to support the trial court's findings that Gary's actions were "intentional, reckless and in knowing disregard of Kent's property rights" and that his conduct was "malicious, outrageous and unreasonable." *Compare R.T. Nahas Co.*, 114 Idaho at 29, 752 P.2d at 631 (punitive damages award for trespass vacated on basis, in part, that property right infringed upon was uncertain until after adjudication). Accordingly, we will not disturb these findings on appeal.

### c. The award did not duplicate the award of statutory damages.

 Finally, we consider whether the court erred in granting both punitive damages and treble damages under the statute. These allegedly duplicitous awards were granted as exemplary damages, the purpose of which is to deter the defendant's misconduct, not to compensate the plaintiff for his losses. *Soria v. Sierra Pac. Airlines*, 111 Idaho 594, 610, 726 P.2d 706, 712 (1986). Hence, in ascertaining whether the awards are duplicitous, the proper focus of our inquiry is not whether the plaintiff obtained a double recovery, but whether the defendant has incurred multiple penalties for the same wrongful act. *Cf.* 22 AM.JUR.2D *Damages* § 817 (1988). It has been said that the imposition of two penalties for the same wrongful act violates basic fairness and thus due process of law, even though the theories behind the causes of action differ. *See id.*, at 864.

 The record in this case reflects that, as required by I.C. § 6–202, the court granted damages for treble the value of the trees that Gary had intentionally and wilfully removed from Kent's lot. However, this award of statutory damages for the

act of taking trees did not prevent the trial court from awarding punitive damages for Gary's conduct in constructing the West Road. In granting this latter damages award, the court found that Gary's act of road building—undertaken in defiance of Kent's unequivocal request that no improvements be made to the lot, specifically "no roads"—was an act distinct from the act of taking valuable trees. In denying Gary's post-trial motion to amend the findings, the district court again expressly found that its punitive damages award was not duplicative of its award of treble damages, but that it had based each award upon distinct acts committed by Gary. We further observe that each of these awards is supported by the evidence, and thus neither will be disturbed on appeal.

## 6. Admission of Hearsay Evidence Did Not Constitute Reversible Error.

█ Gary also takes exception to the court's decision to allow Kent to testify to a previous conversation he had with Jean's son, Herb. The thrust of this testimony was that Jean and Gary had contrived a factual scenario, solely for purposes of this lawsuit, to support Gary's claim of ownership to the disputed southern portion of Kent's lot. Gary objected to the testimony on the ground that it was hearsay. Overruling the objection, the court admitted the evidence under the "present sense impression" exception to the rule against hearsay. *See* I.R.E. 803(1). We note, however, that the district court expressly found that Gary in fact believed he owned the disputed portion of Kent's lot. This finding, which is contrary to Herb's reported story, indicates that the court was not persuaded by this hearsay testimony. Moreover, the court's finding is consistent with its refusal to award any exemplary damages arising out of Gary's construction of the Beach Access Road and the installation of the hitching post. Hence, we conclude that any error in allowing the hearsay testimony was harmless, as it did not affect any substantial right of the party, Gary, over whose objection the evidence was admitted. *See* I.R.E. 103(a); I.R.C.P. 61.

## 7. The Trial Court Did Not Err in Refusing to Grant a Prescriptive Right to the Turn-around Roadway.

█ Gary next asserts that the court erred in denying his claim of a prescriptive right of easement over the turn-around road located in the middle of Kent's lot. In order to establish a private prescriptive right of easement, a claimant must submit reasonably clear and convincing proof of open, notorious, continuous, and uninterrupted use, under a claim of right, with the knowledge of the owner of the servient tenement, for the prescriptive period of five years. I.C. § 5–203; *Chen v. Conway*, 121 Idaho 1000, 1005, 829 P.2d 1349, 1354 (1992); *West v. Smith*, 95 Idaho 550, 557, 511 P.2d 1326, 1333 (1973). If the roadway's use was adverse for *any* continuous five-year period, that use can establish a prescriptive right to the continued use of the road. *Burnett v. Jayo*, 119 Idaho 1009, 1012, 812 P.2d 316, 319 (Ct. App.1991). However, a prescriptive right cannot be obtained if the use of the servient tenement is by permission of its owner, as such use clearly is not adverse to the rights of the owner. *State ex rel. Haman v. Fox*, 100 Idaho 140, 143, 594 P.2d 1093, 1096 (1979); *Burns v. Alderman*, 122 Idaho 749, 754, 838 P.2d 878, 883 (Ct.App. 1992).

In this case, the district court found that Gary's use of the turn-around had been permissive. Gary takes issue with this finding. He contends that his continued use of the turn-around roadway between 1970—when Kent first acquired title to the lot—and 1982, when Kent confronted Gary about having widened the roadway, raised the presumption of adverse use for the prescriptive period and shifted the burden to Kent to prove that the use was permissive. He argues that Kent failed to rebut this presumption, and that the court's finding therefore must be reversed. We are not persuaded.

█ The presumption from which Gary seeks to benefit applies where the claimant has established his open, notorious, continuous, and uninterrupted use of

the way for the prescriptive period, *without evidence as to how that use began. West*, 95 Idaho at 557, 511 P.2d at 1333; *Burns*, 122 Idaho at 754, 838 P.2d at 883. In this case, however, the record contains ample evidence detailing the Bumgarner family's acquisition of the Cottonwood Bay Property, the forging of the original turn-around road in the middle of that property, and Gary's use of the turn-around between 1970 and 1973 to access vehicles which Kent had expressly permitted him to locate on his lot. Given this evidence, a presumption of adverse use and claim of title was not appropriate. Moreover, the record is devoid of any evidence to show that Gary's use of the existing turn-around was adverse to Kent's interests, or that Gary had ever asserted a claim of nonpermissive right to use that roadway. Upon this record, the court could properly find that Gary's use of the turn-around after 1970 had been with Kent's permission. Accordingly, we uphold that finding.

### 8. The Attorney Fees Award Does Not Represent an Abuse of Discretion.

We next consider the district court's award of attorney fees. Following the district court's issuance of findings and conclusions, Kent submitted a costs bill which included $37,065.50 in attorney fees. By its subsequent memorandum decision and order awarding attorney fees, the district court held that "a reasonable apportionment of the total fees incurred in this matter to the trespass claim, is the sum of $18,532.75," and awarded Kent attorney fees in that amount. Gary does not dispute that Kent's success on the statutory trespass claim entitles him to a mandatory award of attorney fees under I.C. § 6–202. However, Gary contends that the trial court abused its discretion in fixing the amount of the award, arguing that the court failed to properly consider the claims upon which he, Gary, had prevailed.

Gary is correct with respect to his assertion that where the parties have succeeded on entirely separate claims, those claims are properly distinguished and should be analyzed separately in determining whether attorney fees are appropriate. *See Ramco v. H–K Contractors, Inc.*, 118 Idaho 108, 113, 794 P.2d 1381, 1388 (1990); *Burns v. County of Boundary*, 120 Idaho 623, 625–26, 818 P.2d 327, 329–30 (Ct.App. 1990), *modified on other grounds*, 120 Idaho 614, 818 P.2d 318 (1991). We also note, however, that the trial court is authorized to award attorney fees only as provided by statute or contract. I.R.C.P. 54(e)(1); *see also Hellar v. Cenarrusa*, 106 Idaho 571, 578, 682 P.2d 524, 531 (1984). In this case, the court based its award of fees on I.C. § 6–202. That statute, which applies to claims for intentional and wilful trespass, mandates an award of reasonable attorney fees in an action "brought to enforce the terms of this act if the plaintiff prevails." *Id.* As applied to the case at hand, this statute authorized the district court to award fees only to Kent, "the plaintiff" in that action, and then to award only those fees reasonably incurred in prosecuting the trespass action upon which he prevailed.[4] Hence, even though the court found that Gary had prevailed on some of the claims asserted, it found no statutory basis upon which he would be entitled to any offsetting award. Consequently, and contrary to Gary's position, there was no basis for the court to apportion fees *between the parties*. Rather, the court was required to award Kent his full reasonable attorney fee attributable to his successful trespass claim.

It is clear from the district court's memorandum opinion and order awarding attorney fees that the court considered the fact that a substantial amount of Kent's efforts were directed at claims upon which he did not prevail, specifically citing Kent's claim for trespass to the beach end of his property and Kent's claim for emotional distress. The court found, however, that some of the legal work performed on those claims overlapped with Kent's successful

---

**4.** Thus, a party who successfully *defends* against a claim for treble damages is *not* entitled to recoup his fees under the statute. I.C. § 6–202; I.R.C.P. 54(e)(1). *Compare* I.C. § 12–120(3) (mandating attorney fees, in certain cases, to the "prevailing *party*.")

claim for trespass to the west end of his lot, and that Kent was entitled to recover those fees. *Accord Bubak v. Evans,* 117 Idaho 510, 513, 788 P.2d 1333, 1336 (Ct. App.1989). Based upon its findings, which Gary does not dispute here, the court allocated one-half of all Kent's attorney fees, or $18,532.75, to the prosecution of the successful trespass claim. Upon this record, we conclude that the district court acted within the boundaries of its discretion and consistent with the legal standards applicable to its decision. We further conclude that the court reached its decision through the exercise of reason. Finding no abuse of discretion, we affirm the district court's award of attorney fees. *See Associates Northwest, Inc. v. Beets,* 112 Idaho 603, 605, 733 P.2d 824, 826 (Ct.App.1987).

### Conclusion

We affirm the district court's judgment quieting title in Kent to a lot approximately seventy-two feet wide. Additionally, we affirm the district court's awards of compensatory, statutory and punitive damages against Gary. Finally, we uphold the district court's award of attorney fees.

Because he has prevailed in this appeal, Kent is entitled to his costs on appeal. I.A.R. 40. We further hold that Kent is also entitled to an award of attorney fees on appeal pursuant to I.C. § 6–202. *See Bubak,* 117 Idaho at 513, 788 P.2d at 1336. The amount of attorney fees shall be determined as provided by I.A.R. 41.

SWANSTROM, and CAREY, JJ., Pro Tem., concur.